16400

O'CONNOR v. BROTHERHOOD OF RAILROAD TRAINMEN

(60 S. E. (2d) 884)

*Mr William H. Blackwell,* of Florence, *for Appellant,*

*Messrs. Royall & Wright* and *Emil T. Cannon,* of Florence, *for Respondent,*

August 24, 1950.

Oxner, Justice.

This action was brought by John F. O'Connor against the Brotherhood of Railroad Trainmen, which has an insurance department incorporated under the laws of Ohio, to recover actual and punitive damages on account of alleged fraud and deceit in inducing him to take out a health and accident insurance policy which was subject to rescission at

any time on the ground of false answers contained in the application.

Plaintiff alleged in his complaint that he truthfully answered all questions concerning his health propounded to him by the Brotherhood's soliciting agent, that he informed this agent that he had recently suffered from gall bladder trouble and was then under the care of a physician for this condition, but the soliciting agent, with the intention to deceive and defraud him, represented that these facts were immaterial and of no importance and without his knowledge fraudulently inserted in the application that he had never had gall bladder trouble, had not received medical advice or treatment during the previous five years, and was then in good health. He further alleged that after paying the monthly premiums for a period of six or eight months, he filed a small claim under the policy and thereupon the Brotherhood promptly cancelled same on account of the misstatement of material facts in the application.

The Brotherhood denied all allegations of fraud and alleged that the answers contained in the application correctly revealed the information given by the plaintiff to its soliciting agent, and that the policy was subsequently cancelled on account of false representations made by the plaintiff concerning his health. It was further alleged in the answer that if the soliciting agent committed the fraudulent acts complained of, he was acting outside the scope of his employment and adversely to his principal, with the knowledge of plaintiff who participated in the alleged fraud.

At the conclusion of plaintiff's testimony, defendant made a motion for a nonsuit, and at the conclusion of all the testimony a motion for a directed verdict. Both motions were refused by the trial Judge and the case submitted to the jury, which returned a verdict in favor of the plaintiff for actual damages in the sum of $81.20 and punitive damages in the sum of $1,000.00. Motion for a new trial by the defendant was overruled. This appeal by the defendant from the judgment entered on said verdict followed.

The only question which we find it necessary to determine is whether the Court below should have directed a verdict for appellant upon the ground that respondent could have ascertained the truth of the matters complained of by ordinary care and attention. Stated differently, if respondent was misled, was it the result of his own reckless disregard of his duty to avail himself of the opportunity and means at hand to protect his own interest?

On June 28, 1946, respondent, who then resided in Florence and was employed as a conductor by the Atlantic Coast Line Railway Company, applied to the Brotherhood, of which he was a member, for a health and accident policy providing a monthly benefit of $100.00, upon which he was to pay a monthly premium of $8.12. The application was handled by one Picotte, a field supervisor of the Brotherhood. Respondent's version of what transpired at the time said application was taken is as follows:

Several days prior to the filing of this application, Picotte and a local representative of the Brotherhood went to respondent's home and discussed the question of insurance with him. A day or two later they returned and respondent decided to take a policy. While the local representative and a friend were talking at one end of the porch, Picotte and respondent sat on the other end where the application was filled out and signed. Picotte propounded various questions contained in the application. Among others, he asked respondent whether he had received medical or surical advice or treatment within the past five years. Respondent answered that he was then under the care of a physician who said that he had gall bladder trouble. Respondent mentioned to Picotte a case where a member's policy had been cancelled and stated that he "wanted to make everything clear so that there wouldn't be a recurrence of the same case." Picotte replied that "gall bladder trouble didn't amount to anything", and "was irrelevant to the fact." After the application was completed, Picotte handed it to respondent who signed same without reading it because he

"had all the confidence in the man I was doing business with for the Brotherhood of Railroad Trainmen."

The application signed by respondent contains, among others, the following questions and answers:

"Have you received medical or surgical advice or treatment within the past five years?

"No.

\* \* \*

"Have you had any of the following: \* \* \* Gall Bladder Trouble \* \* \*?

"No.

\* \* \*

"Are you now in good health?

"Yes."

Appearing above the signature of respondent on this application and following in heavy type the admonition "Note Carefully The Following Declaration And Agreement", is the following:

"I, the undersigned applicant, hereby agree \* \* \* that all the foregoing statements and answers and those on the reverse side hereof I adopt as my own, admit to be material, warrant to be true, full and complete, and made the basis of the contract with said Brotherhood of Railroad Trainmen Insurance Department, and in the event any untrue or incomplete statements or answers have been made, this contract shall be null and void and of no effect; that no statements made to the Brotherhood's representative shall be binding on the Brotherhood unless reduced to writing and included in this application. \* \* \* "

Picotte denied that respondent informed him of his gall bladder trouble and testified that the answers recorded in the application correctly represented the information given to him by respondent. The local representative of the Brotherhood and the other man were sitting at the opposite end of the porch at the time the application was taken testi-

fied that they did not hear the conversation between Picotte and respondent.

The policy, to which was attached a copy of the application, was duly issued and delivered to respondent and became effective July 1, 1946. (Apparently no medical examination was required.) Respondent suffered an attack of appendicitis on December 1, 1946. Several days later he underwent an appendectomy and did not return to work until January 17, 1947. Thereafter a claim under the policy was filed. On April 11, 1947, the Brotherhood refused to pay the claim and cancelled the policy on account of false representations contained in the application. Respondent had paid all premiums through April, 1947, aggregating $81.20. The Brotherhood tendered this amount to respondent who declined to accept it and about a year later instituted this action. The actual damages found by the jury, namely $81-.20, represented the amount of premiums paid on the policy.

We think respondent's reckless disregard of his duty to avail himself of the opportunity and means at hand to protect his own interest precludes recovery. He is not an illiterate person but is conceded to be a man of intelligence. Had he read the application, he would have known that the soliciting agent's statements that "gall bladder trouble didn't amount to anything" and "was irrelevant to the fact" were untrue, and would have known that false answers were inserted with reference to his health. It was clearly stated in this application that the answers were material and if untrue, rendered the policy null and void. Respondent has shown no good reason for failing to read this application. There was no relation of trust and confidence between him and the soliciting agent. They had not known each other prior to this transaction. The soliciting agent did nothing to prevent respondent from reading the application. Respondent's statement that another policy issued by the Brotherhood had been cancelled shows that he realized the importance of the facts being truthfully stated

in the application. He was evidently apprehensive of his insurability. Although these circumstances called for caution, he paid no attention whatsoever to the answers being inserted by the soliciting agent who was sitting beside him and made no effort to read the application before signing it. Respondent also had an opportunity of learning the truth after his policy was issued. There was attached to it a copy of the application. He kept this policy in his possession for a period of approximately ten months without making any effort to read the application which he had signed.

We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument, and that one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning. *J. B. Colt Co. v. Britt*, 129 S. C. 226, 123 S. E. 845. This rule has been applied to applications for contracts of insurance. It was held in *Prince v. State Mutual Life Insurance Co.*, 77 S. C. 187, 57 S. E. 766, that it was gross negligence for one to sign an application for insurance without knowing its contents and without considering the effect it would have upon his rights.

*Frierson v. Inter-Ocean Casualty Co.*, 168 S. C. 178, 167 S. E. 232, involved an action for fraud and deceit based on the contention that defendant agreed to sell plaintiff a policy of insurance on the life of her sister which the agent represented would cover death from any cause, but delivered only an accident policy. The plaintiff, who was named as beneficiary in the policy, could read and write, although a woman of limited education. The policy delivered was in accord with that stated in the application. The plaintiff kept the policy, which showed on its face that it only provided accidental benefits, in her possession for about six months but failed to read it. The Court held that there was no actionable fraud

for the reason that the plaintiff was negligent in failing to read the application and in failing to inspect the policy after it was delivered. In *Hood v. Life & Casualty Ins. Co. of Tennessee et al.,* 173 S. C. 139, 175 S. E. 76, the syllabus pertinent to the issue under consideration is as follows: "Where beneficiary paid premiums on limited accident insurance policy and had opportunity, for more than year before insured was drowned, to read and ascertain contents of policy, but failed to do so, beneficiary held not entilted to damages for fraud and deceit based on alleged false representations by insurer's agent that policy covered all accidents, on ground of failure to exercise reasonable diligence to read policy." The same principle was recognized and applied in *Dukes v. Life Insurance Co. of Virginia,* 184 S. C. 500, 193 S. E. 36.

*Souba v. Life Insurance Co. of Virginia,* 187 S. C. 311, 197 S. E. 826, 827, involved an action for fraud and deceit based on the contention that the defendant falsely represented to the plaintiff that she had been substituted as beneficiary on a policy insuring the life of her husband. The insured had concluded to let the policy lapse but his wife decided to pay the premiums and keep the policy in force. She desired to have herself designated as beneficiary in lieu of her husband's son by a former marriage. Application for the change of beneficiary was duly executed by the insured and forwarded to the defendant along with the policy. The policy was returned to the plaintiff with a letter from the agent stating that it had been changed so as to make her the beneficiary and that it was in order for her to pay the premiums. The plaintiff examined the policy and called the agent's attention to the fact that the beneficiary had not been changed, whereupon the agent stated to her: "Everything was all right; that it had been changed in the office." On the strength of this representation, the plaintiff paid several premiums prior to the death of her husband. Recovery was denied on the ground that plaintiff, knowing that she was not designated as beneficiary, kept the policy in her possession for

a period of about four months without doing anything to protect her interests. The Court said: "Even if the agents made the statements, oral and written, concerning the change of beneficiary which the plaintiff asserts they made, there was no actionable fraud, for the reason that she failed to take advantage of the opportunity and means afforded her of learning the truth."

The decisions just reviewed are decisive of the question before us. Indeed, the circumstances supporting negligence are much stronger in the instant case than those presented in some of these cases for here we have not only a failure to examine the policy after it was delivered but a failure to read the application which would have disclosed the truth with respect to the representations made by the agent. In seeking to distinguish these cases, respondent's counsel argue that the misrepresentations there involved related to the nature of the coverage or other matters which would have been known to be false by a cursory examination of the policy, while in the instant case it is claimed that the representations were of such character that their falsity could not have been discovered by an examination of the policy. We see no basis for the distinction sought to be made. The application plainly disclosed that the answers were material and if untrue, the policy would be null and void.

We have not overlooked *Thomas v. American Workmen*, 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1, which was an action for fraud and deceit based on misrepresentations by the soliciting agent concerning coverage of policy and weekly benefits. In that case the plaintiff and her husband were illiterate Negroes, unable to read or write, and utterly without experience in business transactions. It was further shown that the soliciting agent purported to read the policy to the plaintiff and assured her that it carried the sick benefit provisions which she believed it contained. The Court held that the question of whether the plaintiff was negligent and reckless in failing to avail herself of the op-

portunity and means at hand to protect her interests and safeguard her rights was properly submitted to the jury.

*The Thomas case* is based on the salutary and just principle that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary. We adhere to that principle but the facts in the instant case do not warrant its application.

Finally, the statement was made by respondent's counsel in oral argument that under numerous decisions of this Court, including the recent case of *Ellison v. Independent Life & Accident Insurance Co.,* 216 S. C. 475, 58 S. E. (2d) 890, respondent could have recovered on the policy on the theory that the knowledge acquired by the soliciting agent with regard to his health would be imputed to the insurer, and the latter, by thereafter issuing the policy and accepting premiums, would be deemed to have waived the right to rely upon the misstatements in the application, or would be estopped to assert their falsity, in avoidance of liability. (This statement appears to be inconsistent with the assertion in respondent's complaint that the contract could have been rescinded by appellant at any time because of misstatements.) Assuming, without deciding, that appellant could not have avoided the policy on the ground of misrepresentations in the application, it does not follow that respondent can recover damages in an action for fraud and deceit. In an action on the policy, the question would be whether insurer should be allowed to avoid the obligation of its policy, where the act upon which avoidance is sought is the act of the insurer through its agent. The insurer there would be asserting the claim of fraud. The question here is whether the respondent can base an action for fraud on misrepresentations as to the materiality of matters concerning his health when by the exercise of due care he would have known that these matters were material and had the effect of rendering the policy null and void.

The Court below erred in refusing appellant's motion for a directed verdict. It is only liable for the return of the premiums. This amount was tendered to and refused by respondent. We find it unnecessary to pass upon the other questions raised by the exceptions.

Judgment reversed and the case is remanded for entry of judgment in favor of appellant in accordance with the views herein expressed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.