16532

BRANHAM v. CAPITAL LIFE & HEALTH INS. CO.

(66 S. E. (2d) 451)

*Messrs. D. McK. Winter,* of Columbia, and *McDonald & McDonald,* of Winnsboro, *for Appellants,*

*Mr. C. E. Strange,* of Winnsboro, *for Respondent,*

August 14, 1951.

BAKER, Chief Justice.

This is an action in fraud and deceit brought by the respondent against the appellant in relation to a policy of insurance issued by the latter providing for hospital and death benefits.

In an earlier action between the same parties, the respondent charged breach of contract, with allegations pointing to fraud in the breach. Appellant's counsel moved to require

the respondent to elect whether he would proceed upon the theory of a fraudulent breach of contract or upon the theory of fraud and deceit, whereupon respondent's counsel stated that he interpreted the action as one for fraudulent breach of contract.

Following the above stated election, appellant's counsel moved to strike from the complaint the allegations therein charging that the breach was fraudulent. The Circuit Judge held that the complaint did not show fraud accompanying the alleged breach, and granted the motion. Thereupon, respondent's counsel took a voluntary nonsuit and instituted the present action alleging substantially the facts contained in the complaint in the first action and in addition charged fraud and deceit at the inception of the contract as follows: "That the defendant by its wilful, wanton, deceitful and grossly reckless conduct has practiced a fraud upon the plaintiff and by its fraudulent misrepresentations induced the plaintiff to enter into a contract of insurance with the defendant upon the representations and enticements of the defendant, by its agents, as are set out in the premises; and that the plaintiff by the inducements and representations of the defendant was led to believe that he was entering into a valid insurance contract and that the plaintiff so relied upon the representations of the defendant, by its agent, as are set out in the premises; and that the fraudulent representations and enticements, as aforesaid, were made by the defendant, through its agent, with the intention and for the purpose of causing the plaintiff to enter into a worthless contract of insurance by representing to the plaintiff that it was a good, valid and binding contract of insurance; and that the defendant, at the time of making its representations to the plaintiff, and at the time of entering into the contract with the plaintiff, and at all the times hereafter when the defendant demanded premiums from the plaintiff, had no intention of keeping the contract with the plaintiff and had no intention of ever paying to the plaintiff any benefit as provided for in the said insurance contract; and that the

plaintiff has been damaged by the aforesaid acts of the defendant  *  *  *."

The defendant answered, setting up the various provisions of the policy hereinafter referred to.

A motion for a nonsuit was refused, as was a motion for a direction of verdict. The jury brought in a verdict for actual damages in the amount of Fifteen Hundred and No /100 ($1,500.00) Dollars, and punitive damages in the amount of One Hundred and No/100 ($100.00) Dollars.

Motions of the appellant for a judgment *non obstante veredicto* and for a new trial were refused.

The case comes before this Court on a number of exceptions, but in the view we take of the case it is necessary for us to deal only with the exception relating to the refusal of the Court to grant the appellant's motion for a direction of verdict.

The policy in question is dated March 3, 1947, and was delivered shortly after that date. It is based upon an application in which the respondent answered "Yes" to the question "Are you in good health at present?" The application admittedly was signed by the respondent. On the back of the application, above the signature of the appellant's agent, but without the signature of the respondent, the following questions and answers appear:

"Have you been a patient in any hospital during the past ten years? Yes."

"If so, give cause and date: August, 1946, pneumonia."

"Name of hospital: Baptist Hosp."

"Name of attending physician: Dr. Madden."

"Has it been necessary for you to consult a doctor during the past two years: Yes."

"If so, give reason and date: Same as above."

On the face of the policy issued pursuant to such application, just above the name of the insurer there appears in red ink, in conspicuous type, the expression "Non Cancell-

able." On the back of the policy, above the name of the insurer, the expression again appears in conspicuous type, in red ink.

Also on the back of the policy, in smaller type, but in red ink, the following appears: "This Policy is issued on approval and does not go into effect until accepted and the first premium paid hereon, by the applicant, and, if for any reason, the insured is not satisfied, it may be returned within fifteen (15) days and all premiums paid will be refunded."

Under the above quoted language there is printed in black ink, in type of conspicuous size, "Read Your Policy."

The coverage of the policy is in sixteen numbered paragraphs. Paragraph 5 sets forth that, "Subject to all conditions of this policy, benefits will be paid for Hospitalization for sickness or accident, or for death, *from any cause originating after date and delivery of this Policy.*" (Emphasis added.) Paragraph 16 provides, "This Policy cannot be cancelled by the Company except for nonpayment of premiums or *for disability commencing before date and delivery of this Policy.* All premiums may be returned and the Policy cancelled at the option of the Company if Insured is not in sound health on the date this Policy is issued and delivered. This Policy and the written application therefor, which is made a part and condition hereof, constitutes the entire contract between the Company and the Insured and no verbal agreements will be recognized." (Emphasis added.)

In October, 1947, the respondent became ill and entered the Columbia Hospital, in Columbia, S. C. While there he filed a claim for benefits under the policy and in support of his claim there was submitted to the appellant a statement of the attending physician which disclosed that the respondent's entry into the hospital was necessitated by "lung ulcers" and that in the opinion of the attending physician, the respondent had been affected with this disease "about 12-15 months." With this information as to the medical record of

the respondent, the appellant refused to accept further premiums and refused to pay any benefits under the policy other than to return the premiums that had been paid on account thereof.

Stating the case in the light most favorable to the respondent, and disregarding the sharply conflicting testimony introduced on behalf of appellant, the material facts are as follows:

Before the issuance of the policy involved in this case the respondent had been persistently solicited by appellant's agent to buy a policy containing hospital benefits. A witness for the respondent testified that in discussing the matter with respondent, appellant's agent, who had knowledge of the prior illness and hospitalization of the respondent, said to the latter that "if he takes out the policy and have to go back to the hospital, it would be a lot of help to him * * *." As the respondent himself testified relative to his conversation with the agent:

"Q. What did you and Mr. Cooper talk about when you talked about insurance—what else? A. I told him I had been sick and been to the hospital, and he told me he said, 'Now if you had had this insurance out when you got sick, look at the good it would have done you.' I said, 'Yes, well people never know that, you see. There ain't nobody know about that,' and he said, 'Now, if you will take out one with me, and if you have to go back to the hospital, it would be a big help to you,' and me and him kept talking about it first one way and another, and I wasn't in no hurry about taking it out for I didn't know, and he kept after me about it and I said, 'Go ahead and write it up. I will take it out with you,—' and he said, 'If you take this out with me and you have to go back to the hospital, it will be a big help.' I said, 'Go ahead, I will try to keep it going some way or another,' and he wrote it out to me and so I have been keeping it up ever since because I had to go back to the hospital, and when I went back to the hospital, of course, I kept my premiums

paid up, no way behind at all, and when I went back to the hospital them boys of mine had taken it to him."

And again, "A. Well, now the only thing me and him talked about was about me being in the hospital the first time and he got after me about taking it out before I went to the hospital the first time, and I didn't take it out with him, and then he come back after I come back from the hospital. I was doing as good as anybody could do, and he got after me about taking out a policy with him so I did. I really didn't want to, but he kept persuading me to take it out and he said, 'See, now if you took out this policy when I first tried to get you to do it, look at the good it would have done you,' and I said, 'Well, a fellow don't never know that,' and he kept talking to me about taking out this policy. I didn't jump right into it, and he kept talking, and I said, 'Well, go ahead and I will take it out.' "

Apparently the appellant did not take the precaution of investigating the nature and consequences of the prior illness of the respondent, although the source of inquiry was given by its agent on the back of the application, as hereinabove set forth. Assuming that the appellant is chargeable with whatever information it would have obtained had it made inquiries of the Baptist Hospital, the essence of the case is seen to be the contention of the respondent on the one hand, that he understood the representations of appellant's agent to mean that he would be entitled to the hospital benefits described in the policy if he again had hospitalization for the same cause as his original entry into the Baptist Hospital, or for any other cause, and the contention of the appellant on the other hand, that the policy expressly excludes liability for hospitalization for a disease "originating" before the delivery of the policy—to which exclusion the respondent is bound.

The respondent had very little education. His formal schooling apparently did not extend beyond the fifth grade. But he was a carpenter, qualified to build a house, a farmer,

and in association with his wife, a storekeeper. In his application for the policy he described himself as a "storekeeper." The testimony leaves no doubt about the fact that however inadequate his formal education may have been, his business experience qualified him to read and understand his policy and the limitations of liability contained therein. He apparently had no difficulty, at the trial, in reading to the jury (on cross examination) some portions of the policy.

About seven months elapsed between the date of delivery of the policy and the date of respondent's entry into the Columbia Hospital, and the respondent had possession of the policy during that time.

On the above state of facts, the doctrine of estoppel would bar the appellant from exercising the right under paragraph 16 of the policy to *cancel* the same "for disability commencing before date and delivery of this Policy." It should and readily could have ascertained the facts as to the cause of the previous hospitalization and is chargeable with information to which it was directed by respondent's application. And giving effect to the testimony of the respondent, as of course we must do in a situation of the present character, there is a jury question as to whether the appellant is not further estopped by reason of the fact that in its agent's solicitation of the insurance, it is alleged to have obtained full information as to the respondent's confinement in the Baptist Hospital.

But the estoppel of the appellant to rely upon the medical history of the respondent to refuse payment of the benefits provided in its policy has relation to an action on the contract for breach thereof. This doctrine, however, has no application to an action in fraud and deceit. Here the appellant is not seeking to defend upon a ground which involves estoppel. To sustain the present action the respondent is called upon to adduce facts and circumstances which tend to justify the avoidance of the contract from the beginning and to entitle the respondent to recover damages for fraud in inducing him to enter into the contract.

In other words, the doctrine of estoppel which is applicable to defenses interposed in an action for breach of contract is irrelevant to an action in which the single question is whether fraud or misrepresentation induced the respondent to enter into the contract.

We recognize the risk that in a case of this kind, the applicant for insurance *bona fide* may have failed to fully understand the scope of his policy and that the selling arguments used by the appellant's agent had a part in creating such a lack of understanding. But on the other hand, if the courts are to strike down the language employed in the written or printed instruments which evidence the transaction between the parties, it would be impossible to carry on commercial transactions and would open the door wide to frauds and perjuries which it is the very purpose of the rules of evidence applicable in contract cases to avoid or minimize.

The contrasting cases of *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1, and *O'Connor v. Brotherhood of Railroad Trainmen,* 217 S. C. 442, 60 S. E. (2d) 884, illustrate the attempt of this Court to protect the insured and the insurer alike, in the light of the facts of each particular case, without departing from long established principles of law relating to the enforcement of contracts according to their terms in actions where fraud is alleged.

In the *Thomas case* the action was for fraud and deceit. The policy provided for the payment of weekly benefits of $6.00 and contained certain exclusions which, if applied, prevented a recovery by the plaintiff. The testimony tended to show that the defendant's agent represented to the plaintiff that the weekly benefits would be $12.00 and that the exclusions which constituted the defense in this case were not contained in the policy. There was further testimony to the effect that the plaintiff was an ignorant Negro woman; that it was undisputed that fraudulent misrepresentations had been made to her in respect to the benefits and coverage

provided by the policy; and that the defendant's agent, who professed to have read the policy to the plaintiff, made material misrepresentations as to the contents thereof. These and other equally material circumstances led the Court to hold that it was for the jury to say whether the plaintiff's reliance upon the alleged misrepresentations was justifiable or excusable. The Court said: "The policy of the courts is, on the one hand, to suppress fraud, and on the other, not to encourage negligence and inattention to one's own interest. Either course has obvious dangers. But the unmistakable drift is toward the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary." [197 S. C. 178, 14 S. E. (2d) 887.]

On the other hand, in the *O'Connor case* the plaintiff testified that he informed the defendant's agent that he had suffered from gall bladder trouble and was under the care of a physician for this condition, but the agent represented to him that these facts were immaterial and of no importance, and that it was all right for him to sign an application setting forth that he was in good health and that he had never had gall bladder trouble or that he had received medical advice during the previous five years. The action was for fraud and deceit. The defendant relied upon the representations made in the application for the insurance and when the falsity of such representations was learned, cancelled the policy.

Attached to the policy in this case was a copy of the application, and the plaintiff had had the policy and a copy of application in his possession for approximately ten months at the time the suit was brought. There was no testimony tending to explain or justify the failure of the plaintiff to read his policy and the copy of application attached thereto. We held that under such circumstances he would not be permitted to recover on the theory of fraud and deceit in the inception of the contract.

As this Court held in the case of *O'Connor v. Brotherhood of Railroad Trainmen, supra*: "We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument, and that one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning." [217 S. C. 442, 60 S. E. (2d) 886.]

From the facts above stated it is apparent that although the respondent has failed to make out a case in fraud and deceit, he nevertheless may be found to have made out a case for damages for breach of contract, subject to the jury issues made by the testimony. These issues would include such questions as whether the appellant was entitled to cancel the policy for alleged misstatements in the application; whether cancellation could be predicated on failure to pay premiums as provided by the policy, and whether the hospital coverage must be deemed to include, under the facts of this case, a cause which originated before the date of issuance of the policy.

As already indicated, in such an action, the appellant, if shown to have had actual and constructive knowledge of the facts or conditions upon which it now relies as a basis for denying liability, would not be permitted to escape liability. So that, had the respondent gone forward with his original action for breach of contract, even with the exclusion of the allegations relating to a fraudulent breach. he would have been entitled to go to the jury on the issue of damages resulting from the alleged breach.

See. *McLaughlin v. Brotherhood of Railroad Trainmen*, 216 S. C. 233, 57 S. E. (2d) 411; *O'Connor v. Brotherhood of Railroad Trainmen, supra; Thomas v. American Workmen, supra.*

As the point is stated in the *O'Connor case, supra*: "* * * In an action on the policy, the question would be whether

insurer should be allowed to avoid the obligation of its policy, where the act upon which avoidance is sought is the act of the insurer through its agent. The insurer there would be asserting the claim of fraud. The question here is whether the respondent can base an action for fraud on misrepresentations as to the materiality of matters concerning his health when by the exercise of due care he would have known that these matters were material and had the effect of rendering the policy null and void."

Here we are dealing with the very different question whether there was fraud on the part of the appellant at the inception of the contract. To permit a recovery on such a legal basis under the facts adduced in this case would be tantamount to turning litigation of the present character into a contest of oral assertions and denials which would deprive written contracts of all of their worth and force.

But in any view of the case the fact is that the respondent is contending for a construction of the policy based on the representations alleged to have been made to him by the agent. Subject to jury questions indicated above, this construction of the policy we conclude to be the correct construction if the action were one for breach of contract. Certainly no fraud upon which to support an action in fraud and deceit can be deduced from the mere fact that the appellant relies upon a different construction.

Being of opinion that on the grounds above stated the appellant's motion for a direction of verdict should have been granted, the case is remanded for the entry of judgment in favor of the appellant under Rule 27.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

OXNER, J., concurs in result.

STUKES, Justice (concurring).

I concur in the opinion of the Chief Justice in this case because I think that the policy is reasonably susceptible of the construction that it covered the hospitalization for

which the insured made claim, and on account of which the company wrongfully undertook to cancel the policy. Ambiguous policy provisions should be construed in favor of the insured. *Cullum v. New York L. Ins. Co.*, 197 S. C. 6, 14 S. E. (2d) 361, 135 A. L. R. 867; *Harwell v. Mutual Benefit H. & A. Ass'n*, 207 S. C. 150, 35 S. E. (2d) 160, 161 A. L. R. 183. The patent ambiguities in the policy provisions made admissible in evidence the parol negotiations between the agent and the insured. 29 Am. Jur. 1126, Insurance, sec. 1501. *DeVore v. Piedmont Ins. Co.*, 144 S. C. 417, 142 S. E. 593. *Schultz v. Benefit Ass'n*, 175 S C. 182, 178 S. E. 867.

However, I agree with the conclusion of the Chief Justice that the enforceability of the policy under the foregoing construction of its terms negatives the cause of action upon which the insured sued in this action. If the policy provides the benefits which were agreed upon between the agent and the insured, which I think it does under the evidence, the insured's action should of course have been upon the policy. Instead, he took the contrary, untenable position that the policy was "worthless", as he says in the complaint. Especially because of the former litigation, this result is a harsh one upon the insured, but he has made his own bed.

OXNER, J., concurs.