## 17080

WILLIAM T. GOODMAN, Respondent, v. GEORGE WASHING-
TON LIFE INSURANCE CO., Appellant

(89 S. E. (2d) 753)

*Messrs. Herbert & Dial,* of Columbia, *for Appellant,*

*Messrs. Seigler & Seigler,* of Columbia, *for Respondent,*

November 1, 1955.

OXNER, Justice.

This is an action to recover damages for alleged fraud and deceit in inducing plaintiff (respondent) to purchase from defendant (appellant) a health and accident policy through fraudulent representations. The trial resulted in a verdict for plaintiff for $375.00 actual and $1,000.00 punitive damages. The sole question for determination is whether the Court below erred in refusing appellant's motion for a directed verdict upon the ground that the evidence was insufficient to sustain the charge of fraud.

During the early part of February, 1953, respondent, a retired textile worker, then 71 years of age, requested his wife, who was about one year younger, to call appellant about procuring some insurance. In response to this telephone call, one of appellant's agents visited respondent's home on February 4, 1953, and after some discussion, respondent applied for a policy of health and accident insurance covering himself, his wife and an unmarried daughter.

He paid the initial premium of $21.50, for which he was given a receipt. Several weeks later the policy, dated February 6, 1953, was mailed to him. It provided for various benefits, including the payment of certain hospital and surgical expenses incurred by the insured as the result of an accident and "from sickness, the cause of which originates while this policy is in force and more than fifteen days after the date hereof." However, any surgical fee for an operation resulting from sickness was to be paid "only if the operation is performed after this policy has been in effect for six months or more."

Respondent, who had suffered from failing eyesight for several years, consulted his family physician in September, 1953, and learned for the first time that he had a cataract in each eye. On October 22, 1953, the one in the left eye was removed. He was confined in the hospital for approximately ten days. The hospital bill amounted to $106.05. The fee of the surgeon was $300.00. Shortly thereafter claims for these two items were filed with appellant. On November 14, 1953, it denied liability upon the ground that these medical expenses resulted from a cause which originated prior to the issuance of the policy. Respondent continued to pay the monthly premium of $15.50 until March, 1954. The total premiums paid to that date amounted to $223.00. The instant action was commenced on April 29, 1954.

The record discloses that about two years prior to the issuance of the policy, respondent discontinued working in the mill and retired because it was dangerous to work around machinery with impaired vision. When he applied for the policy, the agent inquired as to the condition of his health and that of his wife and daughter He replied that his health was good but his eyes "had failed" him. It is undisputed that he had no idea at that time that he had cataracts and thought that his bad eyesight was due to advancing age. Nor is there any testimony warranting an inference that the agent had any reason to believe that respondent was then suffering from cataracts. In fact, the testimony does not disclose

exactly when they developed. The surgeon who performed the operation was unable to say whether respondent's impaired vision during the previous two years was due to cataracts or some other condition. He testified that "there is no way you can tell by looking at a cataract how long that cataract has been progressing", and that it might develop in two weeks or take several years.

The only misrepresentation charged in the complaint is that the agent stated "that said policy of insurance would pay benefits for medical treatment and hospitalization after a waiting period of fifteen days." In support of this allegation, respondent testified as follows:

"Q. Now, did she also discuss with you the time when this insurance would become effective, or when it would be in benefit? A. She said in case of an accident, it was in effect then, as soon as we paid that $21.50.

"Q. That was in case of an accident? A. That's right.

"Q. And she told you what? A. She said if we had an accident that day or that night or any time, go on to the hospital and the company would take care of it.

"Q. Did she tell you anything else about the effective date of the benefits, or when it would become in benefit? A. She said after fifteen days it would be in full benefit.

"Q. Was that as relates to sickness? How about the sickness or health part of it? A. She said nothing about that. There was a waiting period of fifteen days and after that the policy would become in full benefit.

"Q. It would be in full benefit after fifteen days? A. Yes, sir, that's right."

The foregoing testimony does not disclose a case of ■ fraud and deceit. If respondent received the impression that surgical fee benefits resulting from sickness became effective immediately after the "waiting period" of fifteen days, no damage resulted because his operation was not performed until after the policy had been in effect approximately eight months, or several months after the expiration of the six months limitation named in the policy. It

is true that the policy also excludes benefits from sickness originating from a preexisting cause, but we do not understand respondent to claim that there was any misrepresentation as to this exclusionary clause. In fact, he said he did not expect to receive a policy covering an existing illness. His wife, who was present when the application was taken, testified that the agent used a brochure in explaining the benefits which would accrue under the policy. This brochure, which was attached to the receipt left with the insured, clearly stated that as to accidents, the policy was effective from noon of its date and covered sickness "the cause of which originates more than fifteen days after date of policy, except if sickness results in an operation within six months after policy date, regular benefits paid with exception of surgeon's fee, anesthesia and operating room expense." Respondent's wife further testified that she read the policy after it was delivered and found nothing different from what the soliciting agent stated to them. She did discover that her name was misspelled and when she called this error to the attention of appellant, an appropriate endorsement making the correction was attached to the policy.

Respondent may not have fully understood the effect of the clause excluding benefits from sickness originating from a pre-existing cause, or he may have attached little importance to this provision in view of his firm belief that he was in good health and had no physical defects, but nothing said by the soliciting agent was reasonably calculated to mislead him.

We are not concerned on this appeal with the factual question of whether the cataracts developed subsequent to the issuance of the policy, for this is not an action on the contract. *Cp. Branham v. Capital Life & Health Ins. Co.*, 220 S. C. 67, 66 S. E. (2d) 451.

*Thomas v. American Workmen*, 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1, and *Shumpert v. Service Life & Health Ins. Co.*, 220 S. C. 401, 68 S. E. (2d) 340, strongly relied on by respondent, are distinguishable in that in each

of them there was evidence of fraud and deceit. Involved also in these cases was the question of whether the applicant for insurance was negligent in not ascertaining the falsity of the alleged misrepresentations. Having concluded in the instant case that respondent has failed to establish fraud, we do not reach the issue of negligence.

Judgment reversed and case remanded for entry of judgment in favor of appellant under Rule 27.

STUKES, TAYLOR and LEGGE, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.