17796

Curtis H. GORDON, Respondent, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant

(120 S. E. (2d) 518)

440

*Messrs. Fulmer, Barnes & Verner,* of Columbia, *for Appellant,*

*Messrs. Edens, Woodward & Butler,* of Columbia, *for Respondent,*

June 7, 1961.

Moss, Justice.

This is a fraud and deceit action to recover actual and punitive damages, brought by Curtis H. Gordon, the respondent herein, against Fidelity & Casualty Company of New York, the appellant herein.

The complaint alleges that the respondent was a career soldier in the United States Army, and that on January 22, 1958, he obtained from the appellant a liability insurance policy covering a motor scooter, and by the medical coverage of said policy, the appellant agreed:

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, *x*-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services    *    *    *."

The complaint alleges that on October 1, 1958, the respondent, while riding the insured motor scooter from his home to Fort Jackson, was injured by being struck by an automobile, and as a result thereof he was hospitalized in the government hospital at Fort Jackson for a period of twelve days, and there had to undergo treatment by various physicians for his injuries. It is also alleged that on May 11, 1959, that the respondent submitted to the appellant a statement showing the course of treatment and hospitalization he had undergone at the Fort Jackson hospital, as a result of his injury on October 1, 1958. The respondent demanded of the appellant the payment of $383.50, which he asserted was the reasonable cost of his hospitalization, and such amount was based upon the appraisal of two Columbia physicians and taken from the prevailing rates of the Columbia Hospital. It is further alleged that the appellant refused to pay the aforesaid claim on the ground that the respondent had incurred no expenses for the hospitalization and medical treatment received at the Fort Jackson hospital. The parties to this action agreed that "the plaintiff incurred no expense or made no cash outlay since he was a soldier and treated at the Fort Jackson hospital."

The complaint alleges that the respondent explained to an agent of the appellant, at the time the medical coverage portion of the policy was issued, that he was a soldier and, if injured, he would be confined to an army hospital for treatment and the agent stated "these facts made no difference." It is also alleged that at the time the medical coverage insurance was purchased that the agent of the appellant knew that if the respondent received medical treatment at an army hospital that no expense would be "in-

curred" by him as required by the terms of the policy, but the agent remained silent thereabout, all of which the respondent alleges constituted a fraud upon him.

The complaint further alleges that the appellant knew that under the medical coverage of the policy in question it would not pay for medical and hospital treatment when furnished to the respondent at a government hospital, but this fact was not disclosed to the respondent. It is further alleged that this related to a material matter known to the appellant, but unknown to the respondent, and a legal duty was imposed upon the appellant to communicate such to the respondent. It is further alleged that the silence on the part of the appellant amounted to a representation known to be false, but relied upon by the respondent as being true.

The appellant interposed a demurrer to the complaint on the ground that it affirmatively appears from the complaint that the respondent had not incurred any necessary medical and hospital expense on account of his injuries, for the reason that such medical care and treatment as he did receive was furnished by an army hospital at no cost or expense to him, and the appellant is not liable for the reasonable value of such medical care and treatment under the terms of the insurance policy set forth in the complaint. The second ground of the demurrer is that the complaint shows that the respondent had the policy in question from January 22, 1958, until the date of his accident, which was October 1, 1958, before he discovered it did not contain the coverage which he believed it to contain, which was ample opportunity for him to learn what it provided, and negates the cause of action for fraud and deceit predicated upon alleged representations and silence of the agent of the appellant at the time of the issuance of the policy.

The demurrer was heard by the Honorable John W. Crews, Judge of the Richland County Court, and he overruled such on the ground that the complaint stated a cause of action for fraud and deceit. This appeal followed.

It is elementary that in passing upon a demurrer, the Court is limited to a consideration of the pleading under attack, and all of the factual allegations thereof that are properly pleaded are, for the purpose of such consideration, deemed admitted. It has also been held that when a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it, are to be regarded as embraced in such averment. *Roper v. South Carolina Tax Commission,* 231 S. C. 587, 99 S. E. (2d) 377, and *Outlaw v. Calhoun Life Ins. Co.,* 236 S. C. 272, 113 S. E. (2d) 817. However, the filing of a demurrer by the appellant does not admit that it was guilty of fraud and deceit because this allegation constitutes nothing more than a conclusion of the pleader which is not admitted by the demurrer. *Alderman v. Bivin,* 233 S. C. 545, 106 S. E. (2d) 385, and *Warr v. Carolina Power & Light Co.,* 237 S. C. 121, 115 S. E. (2d) 799.

In this action for fraud and deceit, the respondent, in order to state a good cause of action, must allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Jones v. Cooper,* 234 S. C. 477, 109 S. E. (2d) 5; *Mishoe v. General Motors Acceptance Corporation,* 234 S. C. 182, 107 S. E. (2d) 43; *Outlaw v. Calhoun Life Ins. Co.,* 236 S. C. 272, 113 S. E. (2d) 817. It is essential that the facts and circumstances which constitute the fraud should be set out clearly. *Bookhart et al. v. Central Electric Co-op., Inc.,* 222 S. C. 289, 72 S. E. (2d) 576. The complaint must allege facts which would afford a basis upon which a jury could properly find support for each of the elements above set forth, and if the complaint fails to allege facts to support any one of the elements of fraud and deceit, then the complaint is fatally defective. *Able v. Equitable Life Assur. Society of United States,* 186

S. C. 381, 195 S. E. 652, and *Warr v. Carolina Power & Light Co., supra.*

Comparatively recently, many liability insurers have included, in their policies, provisions under the terms of which the insurer undertakes to pay for medical expenses, within specified limits, incurred as a result of the condition or use of the property in connection with which the liability insurance is written. The liability of the insurer for medical expenses under such a provision depends upon the construction of the particular language used in the contract.

It is a well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. *Pitts v. Glen Falls Indemnity Company,* 222 S. C. 133, 72 S. E. (2d) 174. However, in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. If the intention of the parties is clear, the Courts have no authority to change the contract in any particular. The Court has no power to interpolate into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties. *Chastain v. United Ins. Co.,* 230 S. C. 465, 96 S. E. (2d) 464.

Here, the appellant agreed "to pay all reasonable expense incurred" for necessary medical and surgical service. There is no uncertainty or ambiguity in the language of the policy. It is too plain to call for judicial construction. The words used must be taken in the plain and ordinary sense in which they are generally used and understood. What legal interpretation should be given to the words "expense incurred"?

In the case of *Drearr v. Connecticut General Life Ins. Co.,* La. App., 119 So. (2d) 149, 151, the plaintiff was a war

veteran and was confined in a government hospital for treatment of and surgery for a duodenal ulcer. He had an insurance policy which contracted to pay him for the expense incurred for hospital charges and services. He brought an action to recover the amount of an alleged bill rendered by the Veterans' Administration for his hospital charges and services. The suit was defended on the ground that the plaintiff was entitled to free treatment at said government hospital and incurred no expense whatsoever in connection with any of the services rendered him. The trial Court held that the veteran, who had executed the required statement under oath regarding his inability to pay for hospitalization was entitled to free care at the veterans' hospital and could not be charged therefor, and, therefore, he had incurred no expense within the meaning of the insurance policy. In affirming the holding of the lower Court, the Court of Appeal of Louisiana said:

" 'Incur emphasizes the idea of liability * * *'. Webster's New International Dictionary. 1. Bouv. Law Dict., Rawle's Third Revision, p. 1531 similarly points to this inherency in its definition of the term incur: 'To have liabilites thrust upon one by act or operaton of law * * *'. Also, there are examples in specific legal situations, where it has been held that a thing for which there exists no obligation to pay, either express or implied, cannot in law be claimed to constitute an 'expense incurred'. See *e. g. Stern-Slegman-Prins Co. v. Commissioner*, 8 Cir., 79 F. (2d) 289; *Bauer Bros. Co. v. Commissioner*, 6 Cir., 46 F. (2d) 874."

The case of the *United States v. St. Paul Mercury Indemnity Co.*, 8 Cir., 238 F. (2d) 594, 595, was an action by the government against an insurer which had issued a poliomyelitis policy to a person who, upon subsequently contracting the disease, received treatment at a veterans' hospital, for cost of such treatment, to the extent of policy coverage. The Court held that where a veteran suffering from nonservice-connected poliomyelitis was accepted for treatment at veterans' hospital, under statute, as veteran en-

titled to free care and treatment upon execution of affidavit of financial inability to pay for treatment, Veterans' Administration, which had taken assignment from veteran of his rights under poliomyelitis policy, which insured him "for expenses actually incurred" in required medical care, could not recover from insurer, since, under statute, veteran had incurred no liability to government arising from such hospitalization. For similar definitions of the word "incurred" as used in medical expense coverage policy, see the cases of *Maryland Casualty Co. v. Thomas et al.,* Tex. Civ. App., 289 S. W. (2d) 652; *Bartlett v. Vanover,* 260 Ky. 839, 86 S. W. (2d) 1020; and *Flanagan v. Baltimore & O. Ry. Co.,* 83 Iowa 639, 50 N. W. 60. Since the parties to this action stipulated that the respondent incurred no expense and made no cash outlay for the treatment he received at the Fort Jackson hospital, the appellant was not liable to the respondent for the reasonable cost of his hospitalization, because the appellant had limited its liability to pay only "all reasonable expenses incurred" by the respondent. There being no obligation on the part of the respondent to pay for the hospitalization he received at Fort Jackson hospital, he "incurred" no expense within the meaning of the provision of the policy of insurance issued by the appellant.

The appellant, by the second ground of its demurrer, asserts that the complaint shows on its face that the respondent had the policy in question in his possession from January 22, 1958, until the date of his injury, October 1, 1958, and was thereby afforded ample time and opportunity to ascertain the coverage provided in said policy. The appellant further asserts that even if the soliciting agent of the company made the representations charged in the complaint, there was no actionable fraud for the reason the respondent had failed to take advantage of the opportunity given him to inspect the policy and to learn the truth of the coverage provided for therein.

We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the content of a written instrument when

the truth could have been ascertained by reading the instrument, and one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning. *O'Connor v. Brotherhood of R. R. Trainmen,* 217 S. C. 442, 60 S. E. (2d) 884; *Jones v. Cooper,* 234 S. C. 477, 109 S. E. (2d) 5, and *Outlaw v. Calhoun Life Ins. Co.,* 236 S. C. 272, 113 S. E. (2d) 817. The complaint in this case does not state a cause of action within the rule of *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1, and *Shumpert v. Service Life & Health Ins. Co.,* 220 S. C. 401, 68 S. E. (2d) 340, because it does not contain any allegations of ignorance and illiteracy of the insured at the time he procured the policy.

The complaint of the respondent alleges that he inquired of the agent of the appellant concerning the medical coverage of the policy and explained to the agent that he was a career soldier, and in the event of injury he expected to be confined at, or removed to, an army hospital for treatment. This allegation of the complaint shows that the respondent was apprehensive of the coverage afforded by the medical provision of the policy should he be confined in a government hospital for treatment for any injury sustained in the operation of the motor scooter.

The case of *Reid v. George Washington Life Ins. Co.,* 234 S. C. 599, 109 S. E. (2d) 577, 578, was an action by the insured for asserted fraud of the sale agent in misrepresenting the coverage of a health and hospital policy. This Court, speaking through its then distinguished, and late lamented Chief Justice Stukes, in affirming the sustaining of a demurrer in the lower Court, held that even if the insurer's agent had been guilty of fraud in misrepresenting to the insured, at the time she applied for said policy, that such covered doctor's calls and ambulance service, where insured had held policy for seven years before she discovered that it did not provide such coverage, and she was not ignorant or illiterate, had no cause of action against the insurer for fraud

as she had failed to take advantage of the opportunity to learn what coverage was afforded.

In the course of his opinion, he said:

"The demurrer was sustained on the ground that the complaint shows on its face that the appellant had the policy for about seven years before she discovered that it did not contain the coverage which she believed it to contain, which was ample opportunity to learn what it provided and negates the alleged cause of action, citing *Frierson v. Inter-Ocean Casualty Co.,* 168 S. C. 178, 167 S. E. 232, and *Dukes v. Life Insurance Company of Virginia,* 184 S. C. 500, 193 S. E. 36.

"We are constrained to agree and we add the following authorities: *Hood v. Life & Casualty Ins. Co.,* 173 S. C. 139, 175 S. E. 76; *Souba v. Life Ins. Co. of Va.,* 187 S. C. 311, 197 S. E. 826, and *O'Connor v. Brotherhood of R. R. Trainmen,* 217 S. C. 442, 60 S. E. (2d) 884, 885.

"Commenting upon the *Frierson case, supra,* and applying the authority of it in the *Hood case, supra,* the court said, 173 S. C. 148, 175 S. E. 79: 'Plaintiff contended in the *Frierson case* that the agent had stated to her that the policy provided for payment of the benefits in case of death "from any cause," and that she relied upon his representations, while it turned out that the policy provided for "accident benefits" only. The court held, in the circumstances stated, that even if the insurance company practiced the alleged fraud on her, there was no actionable fraud, for the reason she had failed to take advantage of the opportunity given her to inspect the policy and to learn the truth as to its provisions. And we say here that even if the agent in the case at bar made the statement concerning the policy which the plaintiff claims he made, there was no actionable fraud, for the reason that she failed to take advantage of the means afforded her of learning the truth as to what the policy contained.' In the *Hood case* the plaintiff had access to the policy tor something over a year and opportunity to learn its contents."

The case of *Souba v. Life Ins. Co. of Va., supra,* involved an action for fraud and deceit, based on the contention that the defendant falsely represented to the plaintiff that she had been substituted as beneficiary on a policy insuring the life of her husband. Application for change of beneficiary was duly executed by the insured and forwarded to the defendant, along with the policy. The policy was returned to the plaintiff with a letter from the agent stating that it had been changed so as to make her the beneficiary. She examined the policy and called the agent's attention to the fact that the beneficiary had not been changed, whereupon the agent stated to her "Everything was all right; that it had been changed in the office." [187 S. C. 311, 197 S. C. 827.] On the strength of this representation the plaintiff paid several premiums prior to the death of her husband. Recovery was denied on the ground that the plaintiff, knowing that she was not designated as the beneficiary, kept the policy in her possession for a period of about four months without doing anything to protect her interest. The Court said:

"Even if the agents made the statements, oral and written, concerning the change of beneficiary which the plaintiff asserts they made, there was no actionable fraud, for the reason that she failed to take advantage of the opportunity and means afforded her of learning the truth."

The case of *O'Connor v. Brotherhood of R. R. Trainmen, supra,* was a fraud and deceit action. It appears that the plaintiff had the opportunity for a period of ten months to learn the contents of his insurance contract, and this Court held that his reckless disregard of his duty to avail himself of the opportunity and means at hand to protect his own interest precluded recovery.

In the case of *Hood v. Life & Casualty Ins. Co. of Tenn., supra,* it was held that where a beneficiary paid premiums on a limited accident insurance policy and had opportunity, for more than a year before the insured was drowned, to read and ascertain contents of policy, but failed to do so,

she was not entitled to damages for fraud and deceit based on alleged false representations by the insurer's agent that policy covered all accidents, on ground of failure to exercise reasonable diligence to read policy.

The case of *Branham v. Capital Life & Health Ins. Co.*, 220 S. C. 67, 66 S. E. (2d) 451, was a fraud and deceit action in relation to a policy of insurance providing for hospital and death benefits. This Court held that where an agent of the insurer allegedly told plaintiff that he would be entitled to hospital benefits under the policy the agent was trying to sell to him, if he had to return to a hospital for the same reason for which he had previously been hospitalized, or for any other cause, although policy expressly excluded liability for disease originating before delivery of policy, and the plaintiff did not read the policy during the seven months period between the delivery thereof and the date of his second entry into the hospital, he could not recover from the insurer on the ground of fraud of the insurer in inception of the contract.

The respondent asserts that the silence of the agent ██ ██ of appellant, with respect to the medical benefits that he would be entitled to under the policy in question, constituted a fraud upon him. We have held that nondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other. The duty to disclose may be reduced to three distinct classes: (1) Where it arises from a preexisting definite fiduciary relation between the parties; (2) Where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) Where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure, without regard to any

particular intention of the parties. *Warr v. Carolina Power & Light Co., supra.* An examination of the complaint fails to show any relation of trust and confidence between the respondent and the agent of appellant. In the *O'Connor case* it was stated that there was no relation of trust and confidence between the plaintiff and the soliciting agent of the Brotherhood of Railroad Trainmen. It was further stated that the soliciting agent did nothing to prevent the respondent from reading the application. Here, the agent of appellant did nothing to prevent the respondent from reading the policy in question. We do not think that silence on the part of the agent of appellant, under the circumstances, amounted to a fraud.

In the instant case, the respondent had the policy in question for more than eight months, with the opportunity to learn the contents and coverage provided for therein. Since he failed to avail himself of that opportunity, he is not entitled to damages for fraud and deceit on the basis that the representations of the soliciting agent are at variance with the coverage of the policy. We think that there was ample opportunity for the respondent to examine the insurance policy in question and his failure to ascertain the coverage therein provided negates the cause of action for fraud and deceit.

The trial judge should have sustained the demurrer and his failure so to do was error.

Reversed.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.