18347

Elizabeth T. PARNELL, Appellant, v. UNITED AMERICAN IN-
SURANCE COMPANY, Respondent

(142 S. E. (2d) 204)

*John P. Gardner, Esq.,* of Darlington, *for Appellant,*

*Messrs. W. Laurier O'Farrell,* of Florence, and *Paul A. Sansbury,* of Darlington, *for Respondent,* ▇▇▇▇▇▇

May 13, 1965.

BUSSEY, Justice.

This action arose out of the application for and issuance by the respondent of a "guaranteed renewable" hospital and surgical expense policy. The plaintiff-appellant at the trial elected to proceed on the theory of an action in fraud and deceit. The jury returned a verdict for appellant for both actual and punitive damages. The trial judge thereafter granted respondent's motion for a judgment *non obstante veredicto,* from which order comes this appeal.

Appellant's complaint alleged that she had been defrauded and damaged as the result of certain alleged fraudulent statements made by respondent's agent while inducing her to purchase the policy; certain alleged fraudulent advertisements and representations of respondent, and the alleged wrongful, unlawful and fraudulent cancellation of the policy by the respondent.

Respondent entered a general denial and also set up as a defense certain alleged misrepresentations by appellant contained in the application for insurance, a copy of which was attached to and made a part of the policy, and that respondent had elected to rescind the policy and declare the same null and void from its inception because of the alleged false statements, and tendered to the appellant a

refund of premiums paid, which refund was refused. In considering whether his Honor was correct in granting respondent's motion for judgment *non obstante veredicto,* it is elementary that the evidence and all inferences reasonably deducible therefrom have to be viewed in the light most favorable to appellant. We, accordingly, proceed to review the record in this light.

Appellant was solicited by an agent of the respondent, one Salyer, on or about the 6th day of April 1961. She was at the time 43 years of age, single, and had finished the tenth grade in high school. She was then employed as a representative selling Avon Products, but previously had been employed as a textile worker. Appellant did not know Salyer and when approached by him, told him that she could not get any insurance as she had been under several doctors, had been in McLeod Infirmary, where it was ascertained that she had a heart condition, had been in Duke Hospital and under the care of doctors for a kidney condition, and named the various doctors who had attended her for her several infirmities. She testified that Salyer had said, "You let me write the policy and if it goes through, if the company passes it, you've got a policy just as long as you live that nobody can cancel it. Nothing can be done unless you refuse to pay the premiums and then you lose your policy."

Salyer had with him at the time, and exhibited to appellant, a specimen policy identical with the one later issued, and an advertisement which gave a summary of the salient features of the policy. Both the advertisement and the policy had printed thereon in bold type the language, "Guaranteed renewable for the life of each insured. Company cannot cancel policy."

In the course of the transaction between Salyer and appellant, they were seated side by side. She testified that Salyer read every word of the advertisement to her and that she was looking at it as he was reading it; that he read the specimen policy to her but she did not specifically say whether

she was looking at that while he was reading. She further testified that Salyer read the application to her but did not state whether such was done before or after he completed the same. She insisted that she did not see what all Salyer put down on the application which she signed without reading. She explained her failure to read such by testifying that she put implicit confidence in him, a man she had not previously known, and

"* * * because I thought he was going to tell the truth. I told him the truth and I was expecting him to write the truth. * * *"

"No, sir. I did not read it because he just said, 'Sign this application, and you've got—if the company passes you, you've got your policy.' "

The application clearly and very plainly shows that it contains numerous answers which were admittedly not true. In response to the question as to how many times she had been confined in the hospital within the past five years, her answer was given as one; the nature of the illness, virus.

In response to the question whether she had had any other medical or surgical advice, treatment or operation in the past five years, it was stated only that she had seen Dr. Aimar in Darlington for a cold. Questions as to whether she had had heart or kidney trouble were falsely answered "no".

The application immediately above appellant's signature contained the following printed language:

"I hereby apply to United American Insurance Company of Dallas, Texas for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and agree that it shall not be effective until a policy has been actually issued while all of the above members are alive and in sound health."

The policy contains, *inter alia,* the following provision:

"ENTIRE CONTRACT; CHANGES:

This policy, including the endorsements and the attached papers, if any, and the application, a copy of which is at-

tached hereto and made a part hereof, constitute the entire contract of insurance. No change in this policy shall be valid unless approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or waive any of its provisions."

In connection with the quoted language, it should be here pointed out that appellant was the only member involved and she knew that she was not in sound health at the time. There is no suggestion on her part that any of the foregoing language was omitted from the reading of these documents to her by Salyer.

That the application contained false material statements is not denied. It is simply contended that appellant told Salyer the truth but that Salyer fraudulently inserted the false answers. This Salyer denied, contending that he wrote the answers precisely as given him by appellant. That appellant herself considered the answers to be material cannot be doubted since, according to her testimony, she considered herself uninsurable in view of the true state of her health when approached by Salyer.

The policy was actually delivered within a couple of weeks after the execution of the application, and appellant did not then read either the policy or the application which was attached thereto and made a part thereof, until the month of August 1961. In the meantime, she had been hospitalized and incurred expense in excess of one hundred dollars, for which she filed her claim. Under date of August 11, 1961, respondent wrote appellant a letter declining to pay the claim and tendering by way of refund all premiums theretofore paid by appellant. According to appellant's testimony, respondent by this letter "cancelled" her policy. The letter was not offered in evidence, but under cross examination appellant read the following excerpt therefrom:

"It appears that there were misstatements on the application which were material to your acceptance as a risk and that a valid contract of insurance did not come into effect."

While the appellant was no doubt unaware of any legal distinction between the words "recission" and "cancellation", the only portion of the letter contained in the record would clearly indicate that the respondent was attempting to effect a rescission of the policy, rather than a cancellation thereof. A deposition by the Claims Manager of respondent is to the effect that the company elected to and sought to rescind the policy.

The issue before us is simply whether the evidence viewed in the light most favorable to appellant is sufficient to support a recovery by her on the basis of fraud and deceit of the respondent in the inception of the transaction, she having elected to proceed on that theory, and the trial court having, without exception, eliminated from the consideration of the jury any issue of wrongful or fraudulent cancellation of the policy. The issue of whether the respondent was or is lawfully entitled to rescind the contract was not submitted to the jury or otherwise passed upon by the trial court.

As we view the record, the only evidence of a fraudulent act or representation by the respondent or its agent Salyer is the evidence to the effect that Salyer fraudulently inserted false answers in the application without the knowledge of the appellant. The key question is whether or not the appellant, under the circumstances, was entitled to rely upon such fraudulent act or representation.

The trial court concluded that the instant case was controlled by the principles enunciated in *Gordon v. Fidelity and Casualty Co. of N. Y.*, 238 S. C. 438, 120 S. E. (2d) 509; *Branham v. Capital Life & Health Ins. Co.*, 220 S. C. 67, 66 S. E. (2d) 451; and *O'Connor v. Brotherhood of Railroad Trainmen*, 217 S. C. 442, 60 S. E. (2d) 884. From the last cited case we quote the following language:

"We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument,

and that one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning. *J. B. Colt Co. v. Britt,* 129 S. C. 226, 123 S. E. 845. This rule has been applied to applications for contracts of insurance."

The appellant, while recognizing the foregoing general rule, contends that the instant case is governed by *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1, and other cases precedent thereto, which recognized and applied an exception to the general rule.

As was said in the *O'Connor* case, *supra,*

"The *Thomas* case is based on the salutary and just principle that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary."

In the *Thomas* case the plaintiff and her husband were illiterate Negroes, unable to read or write, and utterly without experience in business transactions. The plaintiff and her husband, for many years, had known the insurance agent who made the false representations. The court simply held that under the circumstances the question of whether the plaintiff there was negligent and reckless in failing to avail herself of the opportunity and means at hand to protect her interests and safeguard her rights was properly submitted to the jury.

Here, we find no circumstances reflected by the evidence which would warrant the application of the principle of the Thomas decision. To the contrary, while there are some immaterial differences, the facts of the instant case are almost identical with the facts of the *O'Connor* case. The appellant here is not an illiterate person, but one of normal intelligence, just as was *O'Connor.* Here, had appellant read the application she would have readily known that it contained false answers, just as *O'Connor* would have known that the representations of the agent were untrue, if he had troubled to read the application. Here, as in *O'Connor,* appellant has

shown no good reason for failing to read the application. Here, there was even less reason for the appellant placing implicit confidence in the agent than existed in *O'Connor*. In neither instance did the applicant know the agent, but in *O'Connor* the agent was officially connected with the Union of which *O'Connor* was a member. Both *O'Connor* and appellant here were apprehensive of their respective insurability and fully recognized the importance of the facts being truthfully stated in the application. Here, as in *O'Conner*, appellant was sitting beside the agent and made no effort to read the application before signing it. Here, as in *O'Connor*, appellant had the opportunity of learning the full truth as to the contents of the application and the policy after the policy was issued.

An additional factual situation adverse to the position of the appellant here, not present in the *O'Connor* case, is that the application was read to the appellant by Salyer and the printed content thereof put her on notice that any policy issued pursuant to the application would be issued solely and entirely in reliance upon her answers to the questions in the application, and that such policy would not be effective unless she were in sound health at the time of issue.

Upon this factual situation we think that the decision of the lower court was fully supported by the decision in the *O'Connor* case and, hence, we deem it unnecessary to review all of the cases which have applied the general rule there followed, or the exceptional cases involving totally dissimilar facts, wherein the general rule was not followed.

In addition to the contention that the instant case is governed by the *Thomas* case, appellant argues that the language in bold print on the advertisement and specimen policy, "Company cannot cancel policy", coupled with the statements of the agent to the effect that if the company passed appellant she would have a policy which could not be cancelled, relieved appellant from any duty to ascertain

the truth or untruth of the representations complained of, or that, in any event, she was not guilty of anything more than simple negligence and should still be allowed to recover against the respondent since there is evidence to the effect that respondent's agent was guilty of willful fraud.

We do not see any sound reason why such should relieve the appellant of her duty in the matter. Neither the printed language nor the statements of the agent constituted any misrepresentation. The policy actually issued was identical with the specimen policy shown and read to appellant. By its terms the policy, if it was a valid contract upon its issuance, is renewable and cannot be cancelled by the respondent. Whether the respondent was or is entitled to rescind the same on the ground that no valid contract ever existed between the parties, is an issue not now before us and one about which we intimate no opinion.

Appellant's contention that simple negligence on her part should not, under the circumstances, bar her recovery, is based on certain quotations from Prosser on Torts, and propositions in the Restatement of the Law of Torts, the soundness of which we do not here need to consider or discuss for two reasons. In the first place, the appellant did not raise this issue in the lower court. Additionally, we cannot help but conclude on the evidence, as did the court in the *O'Connor* case, that appellant was guilty of reckless disregard of her duty, which would still bar her from recovery even if the legal theory now advanced by her be correct.

Judgment of the lower court is, accordingly,

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.