**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STEPHEN E. DARLING; RHONDA RENE
DARLING,
Plaintiffs-Appellants,

v.

SAVERS LIFE INSURANCE COMPANY,

No. 97-1429

Defendant-Appellee,

and

AMERICAN HEALTH UNDERWRITERS,
INCORPORATED,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CA-94-2452-2-23)

Argued: October 1, 1997

Decided: December 15, 1997

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Eric James Davidson, DROSE, DAVIDSON & BEN-
NETT, Charleston, South Carolina, for Appellants. Harry Lee Davis,

DAVIS & HAMRICK, L.L.P., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Danny H. Mullis, HOLMES & THOMSON, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellee, Savers Life, entered into a contract to provide health insurance to Stephen Darling and his wife, Rhonda Darling. The application for insurance, on which the contract was based, was completed by Michael O. Benke, an insurance salesman, **1** in consultation with Stephen Darling on September 24, 1993. <u>See</u> J.A. at 123, 144. Rhonda Darling was not present during the meeting between her husband and Benke, but Stephen Darling spoke with her on the telephone to obtain information for the application. <u>See id</u>. at 112-13, 145. Stephen Darling signed the application for himself; at Benke's urging, Rhonda Darling authorized Stephen Darling's mother, Erica Darling, to sign the application on Rhonda Darling's behalf and Erica Darling did so. <u>See id</u>. at 126, 146. The Application states that the insureds "agree that the falsity of any answer or statement in this Application may bar the right to recover thereunder if such answer materially affects the acceptance of the risk or hazard assumed by the Company." <u>Id</u>. at 54. On or about October 2, 1993, a Savers Life employee, Norma Long, conducted a telephone interview with

_____

**1** Mr. Benke operated an insurance agency known as Business Management Consultants and was a sub-agent of American Health Underwriters (formerly known as Savers Health Underwriters). American Health Underwriters is not corporately related to appellee, Savers Life. <u>See</u> J.A. at 105-108, 141. In accordance with South Carolina law, Benke was licensed to submit applications for insurance to Savers Life through American Health Underwriters. <u>See id</u>. at 105-108, 141-143.

2

Rhonda Darling to follow upon the information contained in the application. Id. at 172-176.

Based on the information provided both in the application and during the telephone interview with Mrs. Darling, Savers Life issued a Certificate of Insurance ("Certificate") to the Darlings, effective October 8, 1993. See id. at 57, 80. The application was attached to and made a part of the Certificate. The Certificate states:

> Please read the copy of the Application attached to this Certificate. Carefully check the application to be sure all information is correct. If you find errors or if any past medical history has been left out of the Application, contact us at 8064 North Point Boulevard, Winston-Salem, North Carolina 27106, immediately. This Application is part of the Certificate, and the Certificate was issued on the basis that the answers to all questions and the information shown on the Application was correct and complete.

Id. at 58. The Darlings did not report any inaccuracies or omissions in the information on the Application.

In conjunction with subsequent claims submitted to Savers Life by the Darlings' medical providers, Savers Life obtained certain historical medical records for the Darlings. See id. at 73-75, 154-59. Savers Life claimed that the information in those medical records differed from that provided by the Darlings in the application and during the telephone interview, and that the Darlings would not have qualified for coverage if they had provided accurate, complete medical histories to Savers Life. Relying on the language of the Application that allows Savers Life to void the policy for material misrepresentations by the insureds, and on South Carolina Code § 38-71-40[2] -- which also

_____

[2] Specifically, South Carolina Code Ann. § 38-71-40 provides:

> The falsity of any statement in the application for any policy covered by this chapter does not bar the right to recovery thereunder unless the false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Id. (emphasis added).

3

allows an insurer to avoid liability when the insureds made material misrepresentations -- Savers Life refunded the Darlings' premium and declared the Certificate void ab initio. See J.A. at 22-23, 162. Savers Life thus refused to pay the Darlings' claims.

The Darlings then initiated this suit, alleging that Savers Life had breached the insurance contract and had, in bad faith, refused to make payments under the contract. The district court found that the Darlings had made numerous material misrepresentations in the information they provided to Savers Life. The district court summarized the discrepancies as follows:

> 1. The Application indicates that neither Mr. nor Mrs. Darling suffered from any neck, back, spine or hip disease or disorder (Question 9(o)). The medical history reveals that Mr. Darling was diagnosed with a bulging cervical disk on August 26, 1993, and received physical therapy for this condition as late as September 10, 1993.
>
> 2. The Application indicates that neither Mr. nor Mrs. Darling had ever suffered from any disease of the thyroid (Question 9(n)). The medical history reveals that Mrs. Darling was diagnosed with thyroiditis on July 9, 1991.
>
> 3. The Application indicates that neither Mr. nor Mrs. Darling ever received treatment for dyspnea (Question 16). The medical history of Mrs. Darling establishes that she was treated for dyspnea in December 1988, January 1992, and March 1992.
>
> 4. The Application indicates that neither Mr. nor Mrs. Darling had ever suffered from chest pains (Question 9(b)) or anxiety (Question 9(s)). The medical history reveals that Mrs. Darling had been treated for chest pains on two occasions and anxiety on two occasions.
>
> 5. The Application indicates that Mrs. Darling never had any disease or disorder of her reproductive organs (Question 10(b)) and never had a caesarian section (Ques-

4

tion 10(f)). Mrs. Darling's medical history reveals a history of ovarian cysts and three caesarian sections.

6. The Application indicates that neither Mr. nor Mrs. Darling had ever suffered from any diseases of the gall bladder (Question 9(j)). Mrs. Darling's medical history reveals that she had surgery for the removal of her gall bladder.

7. The Application indicates that neither Mr. nor Mrs. Darling had ever suffered from any disease of the rectum, esophagus, or intestines (Questions 9(j) and 9(h)). The medical history reveals that Mrs. Darling had been treated for diarrhea and rectal bleeding and had undergone a colonoscopy.

J.A. at 204-205.

Based on these findings, the district court determined that Savers Life was entitled to rescind the Darlings' insurance policy for material misrepresentations pursuant to the contractual language of the policy and to South Carolina Code § 38-71-40.[3] The district court granted summary judgment to Savers Life, and this appeal followed.

Although we disagree with the district court's implicit finding that there were no disputed factual issues about any of the alleged misrepresentations that it enumerated, we believe that no genuine factual

_____

[3] The district court did not decide whether the insurance salesman, Benke, served as the legal agent of the Darlings or of Savers Life, although the court noted that, under the applicable legal standard, Benke appeared to be the legal agent of the Darlings. See J.A. at 200. It was not necessary to resolve this agency question because even if Mr. Benke was acting as an agent of Savers Life, that fact would not obviate the Darlings' responsibility for any misrepresentations in the application. See Parnell v. United Insurance Co., 142 S.E.2d 204 (S.C. 1965) (allowing insurer to rescind the policy based on material misstatements in the plaintiff's application, even though the plaintiff alleged that the insurance company's agent had inserted false answers in her application without her knowledge and that she had signed the application without reading it).

dispute exists as to the Darlings' material misrepresentations about Mr. Darling's bulging cervical disk, Mrs. Darling's history of chest pain, and Mrs. Darling's treatment for dyspnea, and that those misrepresentations were sufficient grounds for Savers Life to rescind its contract with the Darlings. Consequently, we affirm the district court's grant of summary judgment for Savers Life.

There is no dispute that Mr. Darling misrepresented his health history on the insurance application by failing to disclose that he had recently suffered a bulging cervical disk. Indeed, at oral argument, the Darlings' counsel conceded that Mr. Darling incorrectly answered the application question that inquired whether the applicants had ever suffered "any Neck, Back, Spine or Hip Disease or Disorder?", J.A. at 53, and that Mr. Darling should have told Savers Life about his bulging cervical disk. The record confirms that Mr. Darling was diagnosed with a bulging cervical disk through an MRI study on August 26, 1993, see id. at 56, and that he received physical therapy for this cervical disk condition as late as September 10, 1993-- just two weeks prior to the date of his application for Savers Life insurance, see id. at 154-56.

Moreover, the record clearly reflects that this misrepresentation was material to Savers Life's assumption of the risk of insuring Mr. Darling. Thomas E. Gullett, who made the decision to issue the Certificate of Insurance to the Darlings in his capacity as Director of Major Medical and Chief Underwriter for Savers Life, testified in his deposition that Mr. Darling's bulging cervical disk was "material to the risk undertaken by Savers Life in underwriting[that] Certificate" and that "the Certificate would not have been issued had that injury and diagnosis been disclosed to Savers Life." Id. at 82. Gullett also testified that Savers Life relies solely upon the Health Underwriters' Guide issued by the American United Life Insurance Company as its underwriting guidelines, see id. at 81; pursuant to those guidelines, back problems of the sort suffered by Mr. Darling would require at least that a rider attach to the policy, excluding coverage for that condition, see id. at 95.

The Darlings assert that Savers Life actually published its own underwriting guide and failed to disclose that fact to the Darlings. See Appellants' Brief at 6. Consequently, the Darlings have submitted an

6

attachment to their brief that contains underwriting guidelines -- on Savers Life letterhead -- which indicate that they are effective as of October 1, 1992. See Appellant's Attachment to Brief [hereinafter, "A.T.B."] at 1. This underwriting manual apparently was not submitted to the district court. Whether the guidelines in the Attachment to Brief are those actually relied on by Savers Life, however, is of no significance because those guidelines also prescribe that a rider should attach for back strain suffered within one year of application. See A.T.B. at 2.

The Darlings argue that the fact that the guidelines merely prescribe that a rider should attach indicates that their misrepresentation was not material because it would not have precluded their ultimate insurability. Ultimate insurability alone is not the test of materiality, however. If a condition would preclude ultimate insurability then it is certainly material, but a condition is not immaterial simply because the applicants might still be insurable under some hypothetical set of policy terms. Instead, information is material when a reasonable person would regard it as likely to affect the insurance company's assessment of the risk and thus its decision whether -- and on what terms -- it is willing to provide coverage. See Atlantic Life Ins. Co. v. Hoefer, 66 F.2d 464, 466 (4th Cir. 1933) (holding that a "representation is material when reasonably careful and intelligent men would regard the fact involved as substantially increasing the chances of the loss insured against; and that this is especially true when the insurer, on becoming aware of the fact, would raise the rates or reject the risk altogether"); Southern Farm Bureau Casualty Ins. Co. v. Ausborn, 155 S.E.2d 902, 908 (S.C. 1967) (holding that a"representation is material when the insured knows or has reason to believe that it will likely affect the decision of the insurance company as to the making of the contract of insurance or as to its terms ") (emphasis added).

Thus, the fact that a rider would be required under either set of guidelines confirms, rather than negates, a finding that Mr. Darling's back condition was material, because it demonstrates that the condition was significant enough to the insurance company's assessment of the risk insuring him would pose that it would automatically alter the extent of the coverage the insurance company was willing to extend to him. Even the Darlings' own expert, Gordon K. Rose, indicated in his deposition that if an applicant for health insurance had a history

7

within a month prior to the application of a cervical disk bulge, the insurance company would probably postpone the application and require a full medical examination by the doctor that does medical exams for the insurance company. See J.A. at 197. Presumably such an examination would be necessary precisely so that the company could effectively evaluate the impact that condition would have on the risk it was considering assuming.

Mr. Darling's material misrepresentation alone would be sufficient grounds for Savers Life to rescind its contract with the Darlings. At oral argument, however, the Darlings' counsel contended that there are "two cases" before this Court, and that Mr. Darling's misrepresentation is irrelevant to whether Mrs. Darling was entitled to continuing coverage from Savers Life. We find no basis for this contention. Counsel's argument implies the existence of two separate contracts, one between Mr. Darling and Savers Life and one between Mrs. Darling and Savers Life. The Darlings, however, completed only one insurance application, were issued only one insurance certificate, and entered into only one contract with Savers Life. See, e.g., id. at 53; id. at 57. In fact, Mr. Darling was the policyholder or "the Insured" under the Savers Life policy. See Application, J.A. at 53 (listing Mr. Darling as the "applicant" and Mrs. Darling as the spouse of the applicant); Certificate, J.A. at 61 (explaining that the"covered persons" under the policy are "the Insured" and the insured's "spouse and . . . unmarried, dependent children who are under the age of twenty-three, named on application attached to this certificate"). Thus, it appears that not only were Mr. and Mrs. Darling jointly, rather than separately, insured by Savers Life, but also that Mrs. Darling's coverage was, in some sense, derivative of Mr. Darling's coverage.

The only South Carolina case that even arguably supports the Darlings' position is Johnson v. South State Ins. Co., 341 S.E.2d 793 (S.C. 1986). In Johnson, the South Carolina Supreme Court held that an insured's fraud as to one portion of the claim he submitted to his insurer did not bar his recovery for that part of the claim that was not fraudulent, id. at 793, even though the plain language of the contract specifically provided that "th[e] entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof . . . or in case of any fraud or false swearing by

8

the insured relating thereto," see Johnson v. South State Insurance Co., 332 S.E.2d 778, 778 (S.C. Ct. App.) (quoting the insurance contract at issue), rev'd on other grounds, Johnson, 341 S.E.2d at 794. In so holding, the South Carolina Supreme Court cited with approval the language of Kerr v. State Farm Fire & Casualty Co., 552 F. Supp. 992 (D.S.C. 1982), aff'd in part, rev'd in part on other grounds, 731 F.2d 227 (4th Cir. 1984), that "fraud will only void provisions tainted by the fraud." See Johnson, 341 S.E.2d at 794.

One might argue by analogy that Mr. Darling's misrepresentation taints only those provisions of the Savers Life policy that provide coverage to Mr. Darling and that his coverage should thus be severed from Mrs. Darling's coverage. However, this same logic would also suggest that Mr. Darling's misrepresentation about his back condition should only taint those provisions of the policy that provide coverage for that condition -- or, in other words, that the insurer must prove that there is a causal link between the misrepresentation and the claim that it is refusing to pay. But the South Carolina Supreme Court has, since Johnson, specifically rejected the requirement of a causal link in the context of life insurance policies. See Carroll v. Jackson Nat'l Life Ins. Co., 414 S.E.2d 777, 778 (S.C. 1992). The court held in Carroll that an alleged material misrepresentation in an application for life insurance need not be causally connected to the death of the insured for the insurance company to void the policy and refuse payment. See id. Moreover, the court also indicated, more generally, that "[t]he majority rule is that there is no requirement that the loss be causally related to the material misrepresentation under a void insurance policy," see id., and narrowed Johnson by indicating that its requirement of a causal connection applies when construing an exclusion in a valid policy rather than when determining whether a policy can be voided for material misrepresentation, see id. n.1. Consequently, it seems very unlikely that the South Carolina Supreme Court would hold that Mr. Darling's coverage was severable from Mrs. Darling's coverage and thus that Mr. Darling's misrepresentation would not void Mrs. Darling's coverage. Counsel's bald assertion that there are two cases before us -- coming on the heels of his concession that Mr. Darling did not and should have disclosed his back condition to Savers Life -- appears to be little more than a last ditch attempt to salvage at least part of the case for his clients.

9

In any event, the information the Darlings provided in the application and subsequent telephone interview materially misrepresented not only Mr. Darling's medical history, but Mrs. Darling's medical history, as well. Although we disagree with the district court's finding that Mrs. Darling has raised no issue of fact as to whether she inaccurately represented her medical history by failing to disclose, inter alia, that she had had thyroiditis, caesarian sections, ovarian cysts, gall bladder surgery, and diarrhea and rectal bleeding, [4] we agree with the district court's conclusion that no genuine factual dispute exists as to the Darlings' material misrepresentations about Mrs. Darling's history of chest pain and Mrs. Darling's treatment for dyspnea. The remaining factual disputes about many of Mrs. Darling's alleged misrepresentations are therefore irrelevant and do not preclude summary judgment because the latter two misrepresentations (and Mr. Darling's misrepresentation) justified Savers Life's rescission of the policy.

_____

[4] We believe that the Darlings, in fact, demonstrated the existence of a factual dispute as to each of these issues. For example, Savers Life contended, and the district court found, that Mrs. Darling had been diagnosed with thyroiditis on July 9, 1991 by Dr. Tracy, but that the insurance application stated that she had never suffered from any disease of the thyroid. In fact, Dr. Tracy's notes reveal, at most, a differential diagnosis of thyroiditis that he would attempt to confirm through further testing. See J.A. at 74 (stating Dr. Tracy's assessment as "Thyroiditis/ hyper[thyroid] state?"). Dr. Tracy's notes also appear to indicate that Mrs. Darling's symptoms might be explained by "mono." See id. Whether Mrs. Darling was ever definitively diagnosed with thyroiditis would thus be a jury question. Similarly, a factual issue exists as to whether the Darlings failed to disclose Mrs. Darling's history of caesarian sections, ovarian cysts, and gallbladder surgery. Mrs. Darling testified in her deposition that she corrected any inaccuracies in her husband's answers to the relevant application questions about each of these conditions during her phone interview with Savers Life representative Norma Long. See Excerpts from the Deposition of Rhonda Darling, A.T.B. at 145-47. Whether Rhonda Darling in fact provided the required information in the telephone interview, thus correcting the inaccurate answers in the application, would be a jury question. Additionally, whether Mrs. Darling's diarrhea and rectal bleeding constitute "diseases" that the Darlings should have disclosed on their application would be a jury question as well.

10

The record indisputably reveals that Mrs. Darling experienced chest pain while walking on the beach on March 4, 1992; that she was seen by her physician, Dr. Tracy, that very day; and that Dr. Tracy diagnosed Mrs. Darling with chest pain of undetermined origin. See J.A. at 75 (stating Dr. Tracy's assessment as "chest pain cause undetermined (poss. reflux, etc.)"). Moreover, uncontradicted evidence in the record confirms that this chest pain -- which occurred less than two years before the application date -- was material to Savers Life's assessment of the risk of insuring Mrs. Darling. Gullett testified that "[p]ursuant to the underwriting guidelines utilized by Savers Life, the Certificate would not have been issued had this treatment and diagnosis been disclosed." Id. at 83-84. Indeed, the Health Underwriters' Guide, cautions that "[a]ny chest pain which prompts a medical consultation is of Underwriting Significance. Approach carefully . . . ." Id. at 100. The guidelines also indicate that"chest pain due to heart disease" is an unacceptable risk, that "chest pain due to other cause" requires a rider, and that "chest pain, cause not found" should be referred to the medical director -- presumably, for further evaluation of the risk.[5] Id. at 100. Although the Darlings' counsel attempted, at oral argument, to characterize Mrs. Darling's chest pain simply as indigestion (based on the doctor's note that one possible explanation was reflux syndrome), he conceded that if Mrs. Darling's history had been disclosed, Savers Life would not have dealt with the risk simply by issuing a rider (which alone establishes materiality), but would have referred the application to the medical director for special consideration of the risk associated with chest pain that has not been definitively diagnosed. Indeed, the Darlings' own expert, Gordon K. Rose, testified in his deposition that "[i]f an applicant for health insurance present[ed] with a history nine months prior to the application of chest pain of undetermined cause" he would consider that history both "material" and "serious."[6] Id. at 91.

_____

[5] The underwriting guidelines contained in the Appellants' Attachment to Brief indicate that angina pectoris ("pain in chest usually associated with heart or circulatory disease") requires a rider if more than two years have elapsed since diagnosis and requires refusal of the application if within two years of diagnosis. A.T.B. at 2.

[6] Admittedly, the chest pain at issue occurred nineteen months, rather than nine months, before the application date, but Rose's frank admission nevertheless underscores the significance that underwriters attach to undiagnosed chest pain.

11

Additionally, the Darlings also have raised no factual dispute that would contravene the district court's finding that the failure to disclose Mrs. Darling's history of dyspnea (difficulty breathing) was a material misrepresentation. Because Mrs. Darling had suffered from a number of conditions about which the application specifically inquired, Question 16 of the application required her to enumerate and "give full details" about "any other ailments about which any Doctor was consulted IN THE LAST 10-YEARS." Id. at 69. Thus, if Mrs. Darling consulted with her doctor about dyspnea, she was obligated to disclose that fact to Savers Life.

Mrs. Darling's medical records reveal that, on at least one occasion, she consulted with Dr. Tracy because she was having difficulty breathing. See id. at 75 (listing Mrs. Darling's subjective complaint as, inter alia, "dyspnea"). Gullett indicated that Mrs. Darling's dyspnea was material to the risk assumed by Savers Life in underwriting the Certificate and also concluded that the Certificate would not have been issued if full disclosure of this condition had been made. See id. at 83. The underwriting guidelines in the record confirm that dyspnea of unknown origin is usually an unacceptable risk and that dyspnea with an identified cause requires a rider. See id. at 97. Appellants attempt to explain away Mrs. Darling's dyspnea by dismissing it merely as Mrs. Darling's subjective complaint, which Dr. Tracy diagnosed as "spastic colon." However, even if Dr. Tracy's diagnosis of "spastic colon" accounted for Mrs. Darling's breathing difficulties (rather than the other symptoms she apparently complained of that day), that means only that the cause of the dyspnea was identified and that a rider -- rather than rejection of the application -- was required. As discussed above, the requirement of a rider for a condition not disclosed confirms, rather than rebuts, a finding that that condition would be material to the insurance company's assumption of the risk.[7]

As the foregoing demonstrates, the Darlings materially misrepresented their medical histories in their application for Savers Life

_____

[7] Dr. Tracy apparently diagnosed"URI pleuritis (diaphragmatic)" as well as "spastic colon," J.A. at 75, and the underwriting guidelines the Darlings present in their Attachment to Brief specifically state that pleuritis (or pleurisy) requires a rider if, as with Mrs. Darling, it occurs within two years of the application date, see A.T.B. at 14.

12

insurance. Savers Life was therefore entitled, both by contractual language and by South Carolina Code Annotated § 38-71-40, to rescind its contract with the Darlings. Accordingly, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

13