574 S.E.2d 502

**William Wade PITTS, Appellant,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Respondent.**

No. 3571.

Court of Appeals of South Carolina.

Heard Sept. 11, 2002.

Decided Nov. 25, 2002.

---

324

Paul J. Doolittle, of Mt. Pleasant; and Ronald R. Parry, of Covington, KY, for appellant.

David L. Freeman and J. Theodore Gentry, of Greenville; and Joel S. Feldman, of Chicago, IL, for respondent.

CONNOR, J.

This appeal arises out of Jackson National Life Insurance Company's sale of preferred and non-preferred whole life insurance polices. Southland Container Corporation originally brought this class action suit against Jackson National, alleging several causes of action including breach of fiduciary duty/constructive fraud; fraudulent concealment and non-disclosure; and unjust enrichment and imposition of a constructive trust. William Wade Pitts was later substituted as named plaintiff. The circuit court granted Jackson National's motion to dismiss the breach of fiduciary duty and constructive fraud causes of action; granted Jackson National's summary judgment motion as to the fraudulent concealment claim; and denied Pitts's motion for summary judgment as to his claim for unjust enrichment. Pitts appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

In 1990, Southland Container Corporation (Southland) purchased "key-man" life insurance on David Katt, its president, from Jackson National. Southland purchased an Ultimate II policy on Katt. Katt allegedly would have qualified for a less expensive Preferred Ultimate II policy, but Southland was not aware of this policy and was not informed of it by Jackson National's agent. In a suit filed December 1, 1995, Southland Container alleged Jackson National sold it the Ultimate II policy when it actually qualified for the Preferred Ultimate II policy. The complaint alleged five causes of action: violation of unfair trade practices act; breach of fiduciary duty/constructive fraud; negligence; fraudulent concealment and nondisclosure; and unjust enrichment and imposition of a constructive trust.

Southland moved for class certification, and a class of South Carolina Jackson National policyholders who purchased non-preferred Ultimate policies, but would have been qualified to purchase preferred policies, was conditionally certified. William Wade Pitts was substituted as named plaintiff and class representative in place of Southland Container when it became apparent that Katt could not devote the necessary time to the litigation.

From 1985 to 1995, Jackson National offered two versions of its whole life insurance policy, the Ultimate I and Ultimate II. Jackson National also offered separate, but corresponding preferred policies, the Preferred Ultimate I and Preferred Ultimate II. The preferred policies had stricter underwriting standards, charged lower premiums, and paid the broker a lower commission than the standard policies of equal face amounts. Non-preferred policies were available to all insurance applicants, while preferred polices were available to "a more restrictive pool of insureds who [had] above average health, good life expectancy, no recent history of smoking and qualif[ied] under factors such as age and amount of insurance." Jackson National's underwriting department assessed the insurability of an applicant based on the policy requested. Thus, if the applicant qualified for the policy in the application, Jackson National would issue that policy without further investigation into whether the applicant qualified for a differ-

ent policy. If the applicant did not qualify for the applied-for policy, Jackson National would advise if the applicant qualified for a different policy.

Pitts purchased his insurance through an independent insurance agent, Bruce Loring, with whom he had no previous relationship. Pitts purchased an Ultimate II policy for his daughter and a Preferred Ultimate II policy for himself. Although Pitts's daughter may have qualified for a preferred policy, Loring testified he chose to seek a non-preferred policy for her because he believed she would not qualify for the preferred policy because of her weight. Jackson National issued both policies as applied for, and the policies were accepted and paid for by Pitts. The amended complaint alleged Pitts's daughter qualified for the Preferred Ultimate II policy but was issued an Ultimate II policy instead, resulting in damages to Pitts.

Jackson National filed a motion to dismiss all five causes of action. The circuit court dismissed the causes of action for unfair trade practices, breach of fiduciary duty, and negligence. Both parties moved for reconsideration, and the circuit court also dismissed the constructive fraud claim.

Following discovery, Jackson National moved for summary judgment on the fraudulent concealment claim. Pitts moved for summary judgment on the equitable claim of unjust enrichment. The circuit court granted Jackson National's motion and denied Pitts's motion.

Pitts appeals, arguing the circuit court erred in dismissing the claims for breach of fiduciary duty and constructive fraud, in granting Jackson National's motion for summary judgment on the fraudulent concealment claim, and in denying his motion for summary judgment on the unjust enrichment claim.

## DISCUSSION

Pitts argues the circuit court erred in granting Jackson National's motions to dismiss the claims for breach of fiduciary duty and constructive fraud. Jackson National's motions to dismiss were made pursuant to Rule 12(b)(6), SCRCP. "Under Rule 12(b)(6), SCRCP, a defendant may make a motion to dismiss based on a failure to state facts sufficient to constitute a cause of action." *Baird v. Charleston*

*County*, 333 S.C. 519, 527, 511 S.E.2d 69, 73 (1999). "Generally, in considering a 12(b)(6) motion, the trial court must base its ruling solely upon allegations set forth on the face of the complaint." *Id.* "A Rule 12(b)(6) motion to dismiss for failure to state a cause of action must be resolved by the trial judge based solely on the allegations established in the complaint." *Berry v. McLeod*, 328 S.C. 435, 441, 492 S.E.2d 794, 797 (Ct.App.1997).

In deciding upon Jackson National's motions to dismiss, the circuit court considered matters outside the pleadings. Numerous exhibits were submitted in the memorandum in opposition to the motion to dismiss, including a copy of the life insurance policy and several tables of policy values. "If on a motion under 12(b)(6) matters outside the pleadings are presented and not excluded, the motion shall be treated as one for summary judgment." *McDonnell v. Consol. Sch. Dist. of Aiken*, 315 S.C. 487, 489 n. 2, 445 S.E.2d 638, 639 n. 2 (1994); *see Berry*, 328 S.C. at 441, 492 S.E.2d at 798 (finding where trial court decided Rule 12(b)(6) motion based on matters outside the pleadings, the court converted the motion to dismiss into a summary judgment motion pursuant to Rule 56, SCRCP).

"[Rule 12(b)(6) ] specifically provides for conversion, provided the parties, upon compliance with the notice provisions of Rule 56, are afforded a reasonable opportunity to introduce evidentiary matters." *Johnson v. Dailey*, 318 S.C. 318, 321, 457 S.E.2d 613, 615 (1995). The pertinent portion of Rule 12(b) allowing conversion provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state facts sufficient to constitute a cause of action, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56.

The memorandum containing the outside materials was dated and filed on May 28, 1996. The order was dated November 25, 1996 and filed November 26, 1996. Because the judge issued the order six months after the memorandum was

filed, there was ample opportunity for the parties to introduce additional evidentiary matters if they desired. Thus, the circuit court implicitly converted the motions to dismiss into summary judgment motions under the provisions of Rule 12(b), SCRCP. As such, the procedural posture from which we review these claims is that of summary judgment.

Summary judgment is proper when it is clear there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *West v. Gladney*, 341 S.C. 127, 132, 533 S.E.2d 334, 336 (Ct.App.2000). "Summary judgment can be granted when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Byerly v. Connor*, 307 S.C. 441, 445, 415 S.E.2d 796, 799 (1992).

"In reviewing the grant of a summary judgment motion, this Court applies the same standard which governs the trial court." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). "In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Id.* "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Id.*

## I. Breach of Fiduciary Duty

Pitts [1] argues the circuit court erred in dismissing the claim for breach of fiduciary duty. Pitts specifically asserts "Jackson National had a fiduciary duty to provide complete and truthful information to Appellant and Class members when selling insurance policies to them, and it breached that duty when it failed to make full disclosure with respect to the type of policies available, the charges, commissions, mortality costs and other expenses associated with those policies...."

---

1. At the time of the motions to dismiss, Southland Container was the named plaintiff. Pitts was substituted on October 1, 1999, after the motions to dismiss were heard and ruled upon. For continuity, Pitts will be discussed as if he were the named plaintiff throughout all of the proceedings in the circuit court, including the motions to dismiss.

Pitts, however, conceded at oral argument the relationship in this case cannot be considered a "pure" fiduciary relationship. Instead, he contends the relationship is based on the unique circumstances of the sale of insurance, which creates a heightened duty, particularly the duty of good faith and fair dealing.

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 599, 358 S.E.2d 150, 152 (Ct.App.1987). A relationship must be more than casual to equal a fiduciary relationship. *Steele v. Victory Sav. Bank*, 295 S.C. 290, 368 S.E.2d 91 (Ct.App. 1988). "Courts of equity have carefully refrained from defining the particular instances of fiduciary relationship in such a manner that other and perhaps new cases might be excluded and have refused to set any bounds to the circumstances out of which a fiduciary relationship may spring." *Island Car Wash, Inc.*, 292 S.C. at 599, 358 S.E.2d at 152; *see Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34, 41, 340 S.E.2d 786, 790 (1986) ("As a general rule, mere respect for another's judgment or trust in his character is usually not sufficient to establish such a [fiduciary] relationship. The facts and circumstances must indicate that one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party."). Therefore, to determine whether a fiduciary relationship existed between Jackson National and Pitts, we must look at the particulars of their relationship.

Although the relationship between an insurer and an insured has at times been characterized as "special," this has occurred only after the parties have entered into a mutually binding contract for insurance, specifically in the posture of an insured's claim of bad faith refusal to pay benefits due under an insurance contract. The conduct at issue in these cases arose based on the insurer's established contractual obligations. *See Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 503 n. 5, 473 S.E.2d 52, 55 n. 5 (1996) ("The duty of good faith and fair dealing is such a duty that arises by

operation of law due to the special relationship of the parties in an insurance contract. . . ."); *see also Lira v. Shelter Ins. Co.,* 913 P.2d 514 (Colo.1996) (holding tort liability for breach of implied duty of good faith and fair dealing is based on quasi-fiduciary nature of insurance relationship and is predicated on parties' contractual responsibilities).

This case, however, requires us to review the context of an insurer/insured relationship from its inception, specifically, at the point of the application for insurance. Our research reveals no South Carolina case, and the parties have cited none, which establishes a fiduciary relationship at the application stage. In fact, our Supreme Court has found an applicant for an insurance policy does not stand in a fiduciary relationship with the insurer. *Gordon v. Fidelity & Cas. Co. of N.Y.,* 238 S.C. 438, 120 S.E.2d 509 (1961) (finding no relationship of trust and confidence existed between the insurance applicant and the insurance agent); *O'Connor v. Bhd. of R.R. Trainmen,* 217 S.C. 442, 60 S.E.2d 884 (1950) (holding no relation of trust and confidence existed between the insurance applicant and the soliciting agent where they had not known each other prior to the transaction and the agent did nothing in preventing the applicant from reading the application).

Pitts attempts to distinguish *Gordon* and *O'Connor,* arguing they are "failure to read" cases, in which the information allegedly withheld from the policy applicants was disclosed in the written materials supplied to them. Although the cases involved a failure on the part of the insured to read the policy, they provide guidance in the present case in that the cases clearly establish the sale of insurance is an arm's length commercial transaction, which does not give rise to a fiduciary relationship. Because an applicant is still operating in the marketplace at the point of purchase, the insurer is in a decidedly different position than after the contract has been entered into; thus, no heightened duty has attached.

We find additional support for this conclusion in the holding of *Moses v. Mfrs. Life Ins. Co.,* 298 F.Supp. 321 (D.S.C.1968). In *Moses,* the insured purchased an annuity contract from the insurer. The insured selected the option of monthly payments during her life without the guarantee of payment beyond her own life. After receiving seven monthly payments, the in-

sured died. Subsequently, the executors of her estate sought to have the election voided in an effort to recover under a more favorable settlement option, which was not chosen by the insured. The executors primarily argued the insurer stood in a fiduciary relationship with the insured. Based on this relationship, the executors claimed the insurer was required to determine which policy was more favorable to the insured. The United States District Court for South Carolina rejected this contention. The Court found the executors' claim of a fiduciary relationship could not "rest upon the mere relationship of insurer and insured." *Moses*, 298 F.Supp. at 323.

Our decision is also consistent with other jurisdictions. *See, e.g., Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind.1993) (finding relationship at the initial purchase of an insurance policy is that of "a traditional arms-length dealing between two parties"); *Stockett v. Penn Mut. Life Ins. Co.*, 82 R.I. 172, 106 A.2d 741, 744 (1954) ("Ordinarily an insurance company stands in no fiduciary relationship to a legally competent applicant for an annuity or other insurance contract."); *Legal Sec. Life Ins. Co. v. Ward*, 373 S.W.2d 693, 697 (Tex.Civ.App. 1963) ("The legal relations between an applicant and an insurance company are fundamentally the same as those between parties negotiating any other contract.").

■ Applying the foregoing analysis to the instant case, we note Pitts first contacted Loring through an insurance brochure Loring circulated. With Loring's assistance, Pitts applied for a Preferred Ultimate II policy for himself. Pitts also completed an application for an Ultimate II policy for his daughter. Loring testified he chose to seek the non-preferred policy for Pitts's daughter because he believed she would not qualify for the preferred policy because of her weight. When Jackson National received Pitts's application, it determined that Pitts was qualified for the Preferred Ultimate II for which he applied, and his daughter was qualified for the Ultimate II policy for which she applied. Having determined that both individuals qualified for the policies they had applied for, Jackson National issued the policies. Pitts alleges his daughter would have received the preferred policy if she had applied for it, and Jackson National breached a fiduciary duty by not informing him she might qualify for a better policy. This assertion fails given no fiduciary relationship was created

merely by the application for insurance. Furthermore, there is no evidence of a course of dealing or circumstances between Jackson National and Pitts that would give rise to a fiduciary duty. *See* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 198:7, at 198–16 (3d ed. 1999) ("[A] fiduciary relationship, if one is found to exist, flows not from the mere fact of an insurance relationship between the parties; something more than the mere fact of an insurance relationship is required to establish a fiduciary relationship."). Without a fiduciary relationship, Jackson National owed no duty to Pitts either to disclose the existence of a preferred policy or to perform full underwriting to determine eligibility for a policy other than that which was requested.

■ Despite the absence of a fiduciary relationship, Pitts contends insurance agents should be required to disclose product differences in situations where these differences are "unknown and unknowable to the average consumer." Initially, we note there is no evidence Loring undertook the obligation to obtain the best policy for Pitts, and absent this undertaking, he is not required to do so. *See Sullivan Co. v. New Swirl, Inc.,* 313 S.C. 34, 36, 437 S.E.2d 30, 31 (1993) (affirming the finding of the trial judge that no obligation exists on the part of an agent or broker to secure insurance at the most favorable prices absent a promise to do so). Moreover, in light of the vast array of available insurance policies, including competitor's policies, it would be impractical to require an agent to disclose all of the differences between these policies.

## II. Constructive Fraud

Pitts argues the circuit court erred in dismissing the claim for constructive fraud. Pitts contends "Jackson National should have either done full underwriting on all policy applicants ... or disclosed to the Ultimate policy applicants that they were not going to receive full underwriting and the effect thereof."

■ "To establish constructive fraud, all elements of actual fraud except the element of intent must be established." *Ardis v. Cox,* 314 S.C. 512, 515, 431 S.E.2d 267, 269 (Ct.App. 1993). Our appellate courts have stated:

> In order to prove [actual] fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Id.* at 515, 431 S.E.2d at 269.

 "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud while intent to deceive is an essential element of actual fraud." *Ardis,* 314 S.C. at 516, 431 S.E.2d at 269–70. "The presence or absence of such an intent distinguishes actual fraud from constructive fraud." *Id.* at 516, 431 S.E.2d at 270. "However, in a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely." *Id.* at 516, 431 S.E.2d at 270.

 "A complaint is fatally defective if it fails to allege all nine elements of fraud." *Ardis,* 314 S.C. at 515, 431 S.E.2d at 269. "Where the complaint omits allegations on any element of fraud, the trial court should grant the defendant's motion to dismiss the claim." *Id.*

 . In Pitts's complaint, there is no allegation of the first element of constructive fraud, a representation. Citing *Ardis,* Pitts argues there is no requirement for an affirmative statement because constructive fraud can be based on omissions or silence where there is a duty to speak. Although *Ardis* recognizes "[n]ondisclosure is fraudulent when there is a duty to speak," this discussion relates to a claim for fraudulent concealment, not constructive fraud. *Ardis,* 314 S.C. at 517, 431 S.E.2d at 270. We find the first element requiring an affirmative representation has not been met. Because all elements must be met and pled, the constructive fraud cause of action was properly dismissed.

 To the extent the matter was heard as a summary judgment motion, there was no evidence outside the complaint of Pitts's reliance or his right to rely. Therefore, granting the

motion was proper on this ground. As previously discussed, there was no fiduciary relationship created by the application for insurance. Thus, Pitts had no right to rely. Moreover, the record provides no evidence of an affirmative representation by Loring in connection with the Pittses' policies. Pitts knew of the existence of two different policies because he obtained a preferred policy for himself at the same time he obtained the non-preferred policy for his daughter. Therefore, he cannot claim Loring acted fraudulently by not informing him of these policies. He already had knowledge of both policies.

## III. Fraudulent Concealment

Pitts asserts the circuit court erred in granting Jackson National's motion for summary judgment as to his fraudulent concealment cause of action. Pitts contends Jackson National was guilty of fraudulent concealment because it failed to disclose information related to the insurance policies.

"Nondisclosure is fraudulent when there is a duty to speak." *Ardis*, 314 S.C. at 517, 431 S.E.2d at 270. Nondisclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction. *Lawson v. Citizens S. Natl. Bank of S.C.*, 259 S.C. 477, 481–82, 193 S.E.2d 124, 126 (1972). Thus, the issue is whether Jackson National had a duty to disclose facts which it did not disclose. In *Ardis*, this Court stated:

> The duty to disclose may be reduced to three distinct classes: (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Ardis,* 314 S.C. at 517, 431 S.E.2d at 270 (quoting *Jacobson v. Yaschik,* 249 S.C. 577, 585, 155 S.E.2d 601, 605 (1967)).

Pitts acknowledged during the motion hearing that the first class of *Ardis,* requiring a pre-existing, definite fiduciary relationship to create a duty to disclose, does not exist in this case. The second class requires one party to expressly or impliedly repose a trust and confidence in the other party. Pitts did not expressly tell Loring he was imposing a trust or confidence in him. There is no evidence that this trust and confidence impliedly existed between Pitts and Loring. The parties had no previous dealings. We have already found they did not have a fiduciary relationship. Further, the relationship involved an arm's length commercial transaction between an applicant and his insurance agent. As previously discussed, our Supreme Court has held there is no relationship of trust and confidence between an applicant and an insurance agent. *See Gordon v. Fidelity Cas. Co. of N.Y.,* 238 S.C. 438, 451, 120 S.E.2d 509, 515 (1961) (finding there was no "relation of trust and confidence between the [insured] and the agent of the [insurance company]"); *see also O'Connor v. Bhd. of R.R. Trainmen,* 217 S.C. 442, 448, 60 S.E.2d 884, 886 (1950) (holding "[t]here was no relation of trust and confidence between [the insured] and the soliciting agent"). Furthermore, Jackson National owed no duty to advise Pitts concerning the policies. *Trotter v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 465, 471, 377 S.E.2d 343, 347 (Ct.App.1988) ("Generally, an insurer and its agents owe no duty to advise an insured."). Therefore, the second class of *Ardis* was not met.

The third class of *Ardis* requires the contract or transaction be "intrinsically fiduciary." We have already recognized that a claim of a fiduciary relationship "cannot rest upon the mere relationship of insurer and insured." *Moses,* 298 F.Supp. at 323. Moreover, at the application stage, the insurer is only required to fulfill a limited role as the Court explained in *Moses:*

> When requested, the [insurer] was obligated to be accurate and fair in its advice and in the information it gave the [insured]. But this did not mean the [insurer] was required to go beyond the request of the [insured] for information, to

inject matters not raised by the [insured], or to make independent inquiries into such extraneous matters, especially when these matters were well within the knowledge of the [insured] herself.

*Moses,* 298 F.Supp. at 324.

In his brief, Pitts contends he "clearly presented evidence which demonstrated the existence of genuine issues of material fact as to whether the circumstances of the case, the nature of the dealings between [Pitts and Jackson National], or their position towards one another implied a trust and confidence which would require a duty to disclose." Despite this statement, Pitts never specifically listed the evidence but instead referenced other arguments. In our view, there is no evidence that would imply a trust and confidence requiring a duty on the part of Jackson National to disclose the existence of preferred policies or to perform "full underwriting" in order to inform every standard policy applicant of any eligibility for a preferred policy.

 Additionally, Pitts received a preferred policy for himself and a non-preferred policy for his daughter. These policies disclosed the information he claims Jackson National concealed. "[O]ne cannot complain of fraud in the misrepresentation of the content of a written instrument when the truth could have been ascertained by reading the instrument...." *Giles v. Lanford Gibson, Inc.,* 285 S.C. 285, 289, 328 S.E.2d 916, 918 (Ct.App.1985) (quoting *Guy v. Nat'l. Old Line Ins. Co.,* 252 S.C. 47, 51, 164 S.E.2d 905, 906 (1968)). *Giles* recognizes the circumstances of each case must be considered. We find the circumstances of this case indicate the nature of the transaction itself did not create any duty to disclose. The third and final class of *Ardis* has not been met. Because we find no disclosure requirement for Jackson National, we affirm the trial judge's grant of summary judgment for the claim of fraudulent concealment.

### IV. Unjust Enrichment
#### A.

Pitts contends the circuit court erred in denying his motion for summary judgment on the unjust enrichment claim. He asserts Jackson National "will be unjustly enriched if it is

allowed to retain [funds it received from Ultimate policy-holders who qualified for the Preferred Ultimate policy] and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by Jackson National through concealment and non-disclosure." In support of his claim for unjust enrichment, Pitts relies on the duty of good faith and fair dealing and the anti-discrimination provision of the South Carolina Code. S.C.Code Ann. 38–55–50 (2002).

■ Generally, the denial of a motion for summary judgment is not immediately appealable. *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 216, 544 S.E.2d 38, 49 (Ct.App. 2001), *cert. granted* (Oct. 10, 2001). However, we have recently recognized an exception to this rule. *Id.* "Specifically, the courts have made a practice of accepting appeals of denials of interlocutory orders not ordinarily immediately appealable when these appeals are companion to issues that are reviewable." *Id.; see Morris v. Anderson County,* 349 S.C. 607, 610, 564 S.E.2d 649, 651 (2002) (stating an appellate court "may, as a matter of discretion, consider an unappealable order along with an appealable issue where such a ruling will avoid unnecessary litigation" ).

Although Pitts correctly characterizes this issue as the denial of his motion for summary judgment, we believe the circuit court's decision to grant summary judgment to Jackson National encompassed the claim of unjust enrichment. In its order, the court recognized Jackson National's argument that "the absence of [a] legal duty would be equally fatal to Plaintiffs' fraudulent concealment claim and to the unjust enrichment claim ... which was also premised on the existence of such a duty." Moreover, the court specifically held "the duty of an insurer to inform an applicant of the availability of an allegedly superior product, or to evaluate the applicant's eligibility for that product, regardless of what product the applicant asked for does not exist in South Carolina. For this reason, Plaintiffs' unjust enrichment/constructive trust claim fails also."

■ Because the denial of the motion for summary judgment on the unjust enrichment claim is so closely connected to these other issues and constitutes a basis for the grant of summary judgment to Jackson National, we may properly

review it at this time. Furthermore, the parties have briefed the merits of the denial of the motion for summary judgment, which further supports our decision to review the unjust enrichment claim. *See Olson*, 344 S.C. at 218, 544 S.E.2d at 51 (holding that "[i]n essence, the parties have consented to have the [denial of the summary judgment motion] adjudicated by this tribunal" because the parties briefed and argued the issue).

Turning to the merits of this issue, we note our Supreme Court "has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment." *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). "Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Id.* Our Supreme Court recently emphasized and adopted this *Scudder May* test as the "sole test for a quantum meruit/quasi-contract/implied by law claim." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 9, 532 S.E.2d 868, 872 (2000).

"In a law action, the measure of damages is determined by the parties' agreement, while in equity, 'the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff.'" *Myrtle Beach Hosp., Inc.*, 341 S.C. at 8, 532 S.E.2d at 872 (quoting *United States Rubber Prods., Inc. v. Town of Batesburg*, 183 S.C. 49, 55, 190 S.E. 120, 126 (1937)). "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." *Id.* at 8, 532 S.E.2d at 872.

Pitts failed to establish any duty to disclose or other cause of action that would allow recovery for unjust enrichment. There was no benefit conferred upon Jackson National that would be unjust for Jackson National to retain. There was no breach of fiduciary duty or fraud involved. Pitts paid for his policy as part of a commercial transaction and there is

no reason to place a constructive trust over these funds. *See SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 500, 392 S.E.2d 789, 793–94 (1990) ("A constructive trust arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty."); *Halbersberg v. Berry,* 302 S.C. 97, 106, 394 S.E.2d 7, 13 (Ct.App.1990) ("A constructive trust arises against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of a wrong or by any form of unconscionable conduct, artifice, concealment, or questionable means and against good conscience, either has obtained or holds the right to property which he ought not in equity and good conscience hold and enjoy.").

## B.

Pitts argues the duty of good faith and fair dealing imposes a duty to disclose on Jackson National. He contends "an action for breach of duty of good faith and fair dealing is not dependent upon the existence of a contract or a finding of breach of that contract."

Our appellate courts have held the elements of an action for breach of the covenant of good faith and fair dealing in an insurance contract are as follows:

(1) *the existence of a mutually binding contract of insurance between plaintiff and defendant;* (2) a refusal by an insurer to pay benefits due under the contract; (3) resulting from the insurers bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing in the contract; (4) that causes damage to the insured.

*Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996) (emphasis added); *Gaskins v. S. Farm Bureau Cas. Ins. Co.,* 343 S.C. 666, 672, 541 S.E.2d 269, 272 (Ct.App.2000), *cert. granted* (June 13, 2002); *see Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 306 S.E.2d 616 (1983) (recognizing existence of a cause of action against an insurance company for bad faith refusal to pay first-party benefits due under an insurance contract); *Peter-*

*son v. West Am. Ins. Co.*, 336 S.C. 89, 102, 518 S.E.2d 608, 614 (Ct.App.1999) ( "[E]very contract carries with it a covenant of good faith and fair dealing in the processing of a claim under a mutually binding insurance contract.").

 The trial judge found "[b]ecause the covenant of good faith and fair dealing does not even come into existence until a contract is entered, it would not apply to the sales transaction that Plaintiffs complain of here." Pitts was not a party to a contract at the time of the challenged conduct of Jackson National's agent. Thus, there can be no duty to disclose based on the implied covenant of good faith and fair dealing. *See* 14 Lee R. Russ Thomas F. Segalla, *Couch on Insurance* 198:16, at 198–29 (3d ed. 1999) ( "[T]he duty of good faith and fair dealing is considered to be mutual duty of the insured and the insurer and generally applies to the conduct of the parties in the context of the insurance contract.").

## C.

Pitts also argues section 38–55–50 of the South Carolina Code "demonstrates that Jackson National's conduct is wrongful and implies a duty to disclose." He contends the statute is relevant in determining whether Jackson National's conduct was wrongful in that it provides a "guidepost or standard in making that determination."

 Section 38–55–50 provides in pertinent part:

An insurer, its agent, or an insurance broker doing business in this State may not make or permit any discrimination in favor of individuals between insureds of the same class and risk involving the same hazards in the amount of the payment of premiums or rates charged for policies of insurance . . . or in any other of the terms and conditions of the contracts it makes.

S.C.Code Ann. 38–55–50 (2002). This statute, a legislative prohibition against insurance discrimination, cannot be read as creating an implied duty to inform the applicant of all available policies. Furthermore, we find this statutory provision does not create a duty to disclose which would allow a claim for unjust enrichment. *See Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000) (stating a court must apply the plain meaning of a statute where its language is unambiguous and

conveys a clear meaning); *Charleston County Sch. Dist. v. State Budget Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."). Additionally, Pitts presented no evidence of discrimination in contracting for insurance that would constitute a violation of this statute. All individuals were treated the same and received the policy they applied for if they qualified. *See Smith v. Liberty Mut. Ins. Co.*, 313 S.C. 236, 437 S.E.2d 142 (Ct.App.1993) (recognizing section 38–55–50 relates to discrimination in contracting for insurance).

## CONCLUSION

Based on the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

ANDERSON and STILWELL, JJ., concur.