# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jeanne Beverly, individually and on behalf of others similarly situated, Appellant,

v.

Grand Strand Regional Medical Center, LLC, Respondent.

Appellate Case No. 2016-001499

_____

Appeal From Horry County
Benjamin H. Culbertson, Circuit Court Judge

_____

Opinion No. 5708
Heard November 8, 2018 – Filed January 15, 2020

_____

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

_____

Sidney L. Major, Jr. and Roy F. Harmon, III, of Harmon & Major, PA, of Greenville; John Gressette Felder, Jr., of McGowan, Hood & Felder, LLC, of Columbia; Chad Alan McGowan and Jordan Christopher Calloway, both of McGowan, Hood & Felder, LLC, of Rock Hill; and Jeffrey Christopher Chandler, of Chandler Law Firm, of Myrtle Beach, for Appellant.

James Lynn Werner, William R. Thomas, and Katon Edwards Dawson, Jr., all of Parker, Poe, Adams & Bernstein, LLP, of Columbia, for Respondent.

_____

**MCDONALD, J.:**  Jeanne Beverly appeals the circuit court's order granting Grand Strand Medical Center, LLC's (Grand Strand's) motion to dismiss Beverly's claims for breach of contract, bad faith, and unjust enrichment.  Beverly argues the circuit court erred in: (1) finding Beverly is not an intended third-party beneficiary of the preferred provider contract between Blue Cross Blue Shield (BCBS) of South Carolina and Grand Strand and (2) dismissing Beverly's claim for unjust enrichment, despite her complaint's allegation that Grand Strand impermissibly collected payments from Beverly and others "at a higher value than contracted for with BCBS."  We affirm in part, reverse in part, and remand to the circuit court for further proceedings.

**Facts and Procedural History**

On April 29, 2005, Grand Strand contracted with BCBS of South Carolina to become a preferred provider within the BCBS preferred provider organization (PPO)[1].  In exchange for this status and access to BCBS members (Members), Grand Strand promised to bill BCBS directly for certain medical services delivered to Members[2] and to accept a discounted reimbursement rate from BCBS for such services.  Specifically, the Institutional Agreement (the Agreement) prohibits Grand Strand from "solicit[ing] any payment from Members"[3] and requires Grand Strand to "accept the reimbursement terms and rates" BCBS established for the PPO.  After executing the Agreement, Grand Strand began marketing itself to Members as a BCBS preferred provider.

---

[1] The PPO is a network of hospitals and medical practices marketed to Members as "preferred providers."

[2] The contract defines "Member" as "anyone who is covered for health care services under the terms of a Benefits Contract or who is eligible for Covered Services as a result of an agreement between Plan and an Associate Plan."  A "Benefits Contract" is defined, in pertinent part, as "any PPO contract between Plan and Member entitling the Member to receive Covered Services or other services as designated in the Benefits Contract."

[3] Exceptions to this provision include: co-payments, deductibles, coinsurance, non-covered services rendered, covered services deemed to be not medically necessary, or covered services provided to Members who are unable to provide sufficient information regarding eligibility and coverage either prior to receiving service or following services rendered.

On September 6, 2012, Beverly was injured in an automobile accident. That same day, she went to Grand Strand's emergency room, where she was evaluated and treated by an emergency room physician. Thereafter, Grand Strand sent Beverly a bill for $8,000.00.[4] Because Beverly had previously purchased a health insurance policy from BCBS—and thus became a Member with access to the PPO network—Beverly did not expect to receive such a bill.

Beverly filed suit against Grand Strand, asserting claims for breach of contract, bad faith, and unjust enrichment. Beverly claimed Grand Strand breached its contract with BCBS and violated its contractual and fiduciary duties to her (and other Members who contracted for access to the PPO network) by billing her directly and charging her an amount exceeding the contractual reimbursement rate.

Grand Strand moved to dismiss and, following a hearing, the circuit court dismissed Beverly's complaint. The circuit court denied Beverly's subsequent Rule 59(e), SCRCP, motion to alter or amend.

**Standard of Review**

"On appeal from the dismissal of a case pursuant to Rule 12(b)(6), an appellate court applies the same standard of review as the trial court." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). "In considering such a motion, the trial court must base its ruling solely on allegations set forth in the complaint." *Spence v. Spence*, 368 S.C. 106, 116, 628 S.E.2d 869, 874 (2006). "If the facts and inferences drawn from the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper." *Id.* "At the Rule 12 stage, therefore, the first decision for the trial court is to decide only whether the pleading states a claim." *Skydive Myrtle Beach, Inc. vs. Horry Cty.*, 426 S.C. 175, 180, 826 S.E.2d 585, 588 (2019).

**Law and Analysis**

**I. Third-Party Beneficiary**

Beverly argues the circuit court erred in finding a Member is not an intended third-

---

[4] Grand Strand billed Beverly $7,031.25 for the initial medical treatment and $968.75 for removal of staples.

party beneficiary of the Institutional Agreement between BCBS and Grand Strand because the Agreement adds Grand Strand to a PPO network structured to provide direct benefits to Members. She further asserts the Agreement's purported "beneficiary disclaimer" does not bar her claims because the disclaimer's own language renders it inapplicable to "a Member's right to receive Covered Services." We agree.

Under South Carolina law, it is well settled that a nonparty may enforce contractual terms that intentionally provide her direct benefits. *See, e.g.*, *Kingman v. Nationwide Mut. Ins. Co.*, 243 S.C. 405, 412, 134 S.E.2d 217, 221 (1964) ("We have held in numerous cases that a contract between two persons, for the benefit of a third, even though such third party be not named therein, can be enforced by such third party."); *Jennings v. First of Ga. Underwriters Co.*, 283 S.C. 455, 457, 322 S.E.2d 694, 695 (Ct. App. 1984) (explaining contracts between two persons for the benefit of a third can be enforced by the third person even though she is not named therein). "The presumption that [a] contract is not enforceable by [a nonparty] may be overcome by showing he was intended to be the direct beneficiary of the contract." *Touchberry v. City of Florence*, 295 S.C. 47, 48–49, 367 S.E.2d 149, 150 (1988).

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 614, 732 S.E.2d 626, 628 (2012) (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008)). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 595, 762 S.E.2d 705, 710 (2014) (quoting *McGill*, 381 S.C. at 185, 672 S.E.2d at 574). "Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract." *Id.*

The circuit court excluded Beverly as a third-party beneficiary based upon its examination of Section 16.16 of the Agreement, titled "No Third Party Beneficiaries," which states:

> This Agreement is not intended to, and shall not be construed to, make any person or entity a third party beneficiary. Notwithstanding the preceding, nothing in

> this section shall affect Plans rights under Article XV, or a Member's right to receive Covered Services[5] pursuant to the terms of this Agreement.

Construing Section 16.16's first sentence in isolation, the circuit court concluded BCBS and Grand Strand disclaimed the possibility of any third-party beneficiary claim by Members. However, the provision's second sentence clarifies that despite this provision "nothing in this section shall affect . . . a Member's right to receive Covered Services pursuant to the terms of this Agreement." A similar phrase is found in the Agreement's recitals: "Whereas, [Grand Strand] desires to become a PPO provider to allow it to provide Covered Services under the terms of this Agreement." Grand Strand's refusal to submit Beverly's bill directly to BCBS is arguably actionable because the language of the Agreement requires Grand Strand to do just that. Likewise, Beverly's allegation that Grand Strand's billing her and demanding an undiscounted sum for covered services states a claim because, pursuant to the terms of the Agreement, Grand Strand agreed to bill BCBS and to accept a discounted reimbursement for Member Beverly's benefit.

Moreover, the remaining twenty pages of the Agreement impose requirements on Grand Strand specifically intended to benefit Beverly and other Members. South Carolina courts have recognized that the parties' intent must be derived from the Agreement's language taken as a whole. This isolated sentence—when considered within the context of the entire Institutional Agreement—does not retract the benefits the Agreement repeatedly bestows upon BCBS PPO Members. Significantly, Section 16.16's second sentence recognizes a "Member's right to receive Covered Services pursuant to the Agreement," thus carving out related claims from any purported third-party beneficiary exclusion.

Further, interpreting Section 16.16's language as a bar to Beverly's claims disregards expressions of the parties' intent set forth elsewhere in the contract.

---

[5] The Agreement defines "Covered Services" as "those inpatient and outpatient hospital services, supplies, equipment, and/or items to be delivered by or through Institution to Members that are reimbursable under the applicable Member Benefits Contract. Certain services, supplies, equipment and/or items are not included under this Agreement as Covered Services, including but not limited to services provided by skilled nursing facilities, durable medical equipment suppliers, outpatient retail pharmacies, and physician services other than radiology, pathology, anesthesiology, and emergency room that are combined billed on [a certain form]." Article XV addresses Associate Plans and is inapplicable here.

BCBS established its PPO "for the benefit of Members." The very first responsibility Grand Strand undertook in the "Institution Services and Responsibilities" section of the Agreement was to "provide Covered Services to any Member." Members are also direct beneficiaries of Grand Strand's promise to accept the negotiated reimbursement rate from BCBS as well as its promise to bill BCBS, not the Member, for covered services.

Other jurisdictions have found a third-party beneficiary disclaimer may not apply when substantive provisions in the contract contradict the purported disclaimer. In a case similar to Beverly's, the Wisconsin Court of Appeals found an insured covered by a health maintenance organization (HMO) was a third-party beneficiary of her insurer's HMO provider contract with the hospital where she was treated following an automobile accident. *Dorr v. Sacred Heart Hospital*, 597 N.W.2d 462, 475 (Wis. App. 1999). The contract's language expressing a general intent to disclaim third-party beneficiaries was ineffective as to the insured because it was inconsistent with other portions of the same contract protecting subscribers' rights. *Id.* (finding "hold harmless" provision's terms were "designed specifically for the purpose of protecting HMO subscribers"). Likewise, a federal district court in Pennsylvania applied similar principles to reject a third-party beneficiary exclusion offered to prevent a medical provider from enforcing a PPO contract between an insurer and a health insurance network. *See Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, Civil Action No. 13-03101, 2015 WL 1954287 (E.D. Pa. Apr. 30, 2015). Because the contract in question purported to exclude third-party beneficiaries while also granting specific benefits to nonparties, the contract was patently ambiguous and the third-party beneficiary claim could not be dismissed on a pre-answer motion. *Id.* at *10. Like the defendant in *Huntingdon Valley*, Grand Strand cannot selectively enjoy certain benefits of the Agreement while disregarding terms beneficial to Members. *Id.*

The Tennessee Supreme Court addressed whether a patient was a third-party beneficiary entitled to enforce a similar institutional agreement between a Tennessee hospital and BCBS of Tennessee in *Benton v. Vanderbilt University*, 137 S.W.3d 614 (Tenn. 2004). *Benton* involved an arbitration dispute, but the dispute arose in part because the court had recognized a BCBS insured was a third-party beneficiary of the hospital's agreement with BCBS of Tennessee. *Id.* at 620. The court explained:

> Applying these principles, we conclude that the Court of Appeals correctly held that Benton was bound by the arbitration provision contained in the contract between

Vanderbilt and [BCBS]. Benton was a third-party beneficiary to the contract who filed an action seeking to enforce rights under the contract. Benton's claim was dependent on his status as a third-party beneficiary to the contract and Vanderbilt's alleged obligations under section 6.1 of the agreement. Accordingly, based on the general principle that a third-party beneficiary cannot enforce favorable terms of a contract while avoiding unfavorable terms, we conclude that Benton's claim seeking to enforce the contract is subject to the arbitration provision.

*Id.; see also West v. Shelby Cty. Healthcare Corp.*, 459 S.W.3d 33, 45 (Tenn. 2014) (citing *Benton* and noting the court had "already held that persons insured by an insurance company are intended third-party beneficiaries of the contract between their insurance company and a hospital. Thus, with regard to an insurance company's customers, 'reasonable charges' are the charges agreed to by the insurance company and the hospital.").

In another billing dispute between a Blue Cross insured and a hospital contracting with the insurer, an Arizona court found a provision requiring the hospital to accept a discounted reimbursement rate was "clearly a benefit to the subscriber; that benefit is both intentional and direct." *Nahom v. Blue Cross & Blue Shield of Arizona, Inc.*, 885 P.2d 1113, 1117 (Ariz. App. 1994). As further evidence that the insured was an intended third-party beneficiary, *Nahom* noted the numerous times the class of Blue Cross subscribers was named in the contract. *Id.* at 1118. The South Dakota Supreme Court reached the same conclusion when construing a hospital's contract with a self-insured health plan. *Jennings v. Rapid City Reg'l Hosp. Inc.*, 802 N.W.2d 918 (S.D. 2011). The health plan's members were third-party beneficiaries to the contract because "the contract language clearly expresses intent to benefit" the members. *Id.* at 922. The *Jennings* court made special note of the contract's recitals which, as in this case, identified the benefits to members the insurance plan expressly intended to provide. *Id. Jennings* rejected the notion that the members could not be third-party beneficiaries because the contract provided direct benefits to its parties, i.e. the hospital and insurer. Notwithstanding its benefits to the contracting parties, the contract also benefited the members, and as such, the members were permitted to protect those benefits by enforcing the contract's terms. *Id.* at 923 ("We look only at who was directly and primarily benefited. In this case, it is [the health plan's insured employees].").

Here, the Agreement's language, structure, and purpose directly benefit Members like Beverly. From its opening provision, the Agreement acknowledges its core objective is to support a PPO created "for the benefit of its Members." The Agreement defines a PPO as "a network of providers under contract with the Plan whereby Benefit Contracts contain financial incentives for Members to seek Covered Services from such providers." These financial incentives are made explicit later in the contract where Grand Strand agreed to accept reimbursement for its services for BCBS Members at a discounted rate. Beyond co-pays and deductibles, Grand Strand was prohibited from directly charging Members for covered services, even at the reduced rate. In clear terms, Grand Strand agreed it would not solicit any payment from Members. Indeed, the Agreement conferred an additional practical benefit on Members by placing on preferred providers such as Grand Strand the obligation to submit the Members' bills to BCBS.

Beverly's third-party beneficiary status is also evident from the PPO's structure, which is established by the Agreement. As a South Carolina district court has explained:

> A PPO is a means of health insurance whereby the insurance company contracts with a network of health care providers, including hospitals. The insurer attempts to negotiate favorable rates of reimbursement for the cost of health care that reflects the volume of patients the insurer expects to deliver to the preferred health care provider. The insurer then passes through some of this cost saving to subscribers in the form of lower co-payments and reduced deductibles, which creates the incentive for the patient to use the preferred providers and, in turn, creates the volume to support the "discount."

*Drs. Steuer & Latham, P.A. v. Nat'l Med. Enters., Inc.*, 672 F. Supp. 1489, 1513 (D.S.C. 1987).

Beverly argues and we agree the PPO here is intended to benefit its participants. Grand Strand gained access to BCBS's expansive membership along with guaranteed reimbursements from BCBS in exchange for accepting both reduced payments as well as the responsibility of submitting Members' claims to BCBS. BCBS gained greater cost control in exchange for promising prompt payment for Grand Strand's services and touting Grand Strand's PPO provider status to Members. Beverly's allegations that Grand Strand's failure to submit Beverly's bill

to BCBS and refusal to bill her at the reduced reimbursement rate state a claim that Grand Strand breached its contract in denying Beverly benefits arising from the Agreement. Therefore, the circuit court erred in dismissing Beverly's breach of contract claim.

## II. Fiduciary Relationship

The circuit court dismissed Beverly's breach of fiduciary duty claims against Grand Strand as based on duties arising from a contract Beverly lacked standing to enforce. However, as discussed above, a nonparty may enforce a contract that intentionally provides her direct benefits.

Although Beverly's complaint alleges certain required elements of a breach of fiduciary duty claim, the circuit court concluded Beverly and Grand Strand did not have a relationship from which a fiduciary duty arose. Beverly claims Grand Strand and Beverly created a relationship of trust when Grand Strand became a PPO preferred provider and accepted the Agreement's terms, and Beverly sought out Grand Strand for medical services because it was a part of the BCBS PPO. By providing Grand Strand with her BCBS PPO insurance identification card, Beverly contends she met the requirements for Grand Strand to fulfill the duties arising from its relationship with BCBS. Thus, Beverly claims Grand Strand breached its duty of trust.

While South Carolina courts have recognized fiduciary relationships between agents and principals, attorneys and clients, the administrator and beneficiaries of an estate, business partners, officers and shareholders of a corporation, and doctors and their patients, there is no authority to support the proposition that a fiduciary relationship exists between a hospital and patient with respect to a hospital's contractual duty to submit an insurance claim. *See Wogan v. Kunze,* 366 S.C. 583, 605, 623 S.E.2d 107, 119 (Ct. App. 2005), *affd as modified,* 379 S.C. 581, 666 S.E.2d 901 (2008) ("[T]his state has not found that medical negligence or malpractice will support a cause of action for breach of fiduciary duty. Nor have our courts found the failure of a doctor to offer assistance in filing a Medicare claim or other claim is a breach of fiduciary duty."); *see also Burton v. William Beaumont Hosp.,* 373 F. Supp. 2d 707, 723-24 (E.D. Mich. 2005) (finding Michigan law does not authorize the imposition of a fiduciary duty related to a hospital's billing practices); *DiCarlo v. St. Mary Hosp.,* 530 F.3d 255, 269 (3d Cir. 2008) ("It is clear, however, that in general New Jersey does not find fiduciary duty in the debtor-creditor context, and, given that the cases cited by both sides relate only to the provision of care and not the payment therefor, it is unlikely that

the New Jersey courts would expand a hospital's fiduciary duty to its billing practices. In the absence of a fiduciary duty, no cause of action exists for its alleged breach, and [the breach of fiduciary duty claim] will therefore be dismissed.").

Here, Beverly does not challenge the quality of the medical care she received. Rather, she complains only of Grand Strand's billing practices and its breach of the BCBS Agreement. Beverly attempts to expand the fiduciary relationship that may in certain circumstances exist between a doctor and patient to encompass a hospital's billing practices for medical services rendered. In essence, Beverly is asking the court to impose a fiduciary duty on a creditor-debtor relationship; South Carolina law does not impose such a duty in the absence of some special trust reposed in the creditor. *See Regions Bank v. Schmauch,* 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003) ("South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature." (citing *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986)). The circuit court properly found South Carolina does not recognize a fiduciary duty related to a hospital's billing practices. Accordingly, we affirm the circuit court's dismissal of Beverly's claim for breach of fiduciary duty.

## III. Unjust Enrichment/Quantum Meruit

Beverly argues the circuit court essentially found it equitable for Grand Strand to charge a Member in violation of its agreement with BCBS. While we disagree the circuit court's order so finds, we agree with Beverly's contention that the court erred in dismissing her quantum meruit claim. *See Columbia Wholesale Co. v. Scudder May N.V.,* 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994) ("Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value."); *Barnes v. Johnson*, 402 S.C. 458, 466, 742 S.E.2d 6, 10 (Ct. App. 2013) (explaining quantum meruit is a remedy for unjust enrichment); *Williams Carpet Contractors, Inc. v. Skelly*, 400 S.C. 320, 327–28, 734 S.E.2d 177, 181 (Ct. App. 2012) (allowing a party to allege an unjust enrichment cause of action as an alternative claim for breach of contract).

Grand Strand argues *Pitts v. Jackson National Life Insurance Co.*, 352 S.C. 319, 574 S.E.2d 502 (Ct. App. 2002), supports the circuit court's dismissal. We disagree. The asserted wrong in *Pitts* was a breach of an alleged "duty of insurer to

inform an applicant of the availability of an allegedly superior product." *Id.* at 338, 574 S.E.2d at 512. However, the court found it was not inequitable for an insurer to retain the price of an insurance policy where the insurer could have offered a policy with similar coverage at a lesser price. There simply was no duty to provide such a notification. *Id.* at 339, 574 S.E.2d at 512. *Pitts* also relied on the fact that the alleged wrongdoing was performed when the plaintiff was a mere insurance applicant. *Id.* at 331, 574 S.E.2d at 508. At that point, there was no existing relationship on which to build a fiduciary duty or to impose liability for unjust enrichment. *Id.*

But Beverly is not a mere insurance applicant; she is a defined Member in a PPO Agreement under which Grand Strand contracted to provide Covered Services. Additionally, Beverly's complaint does not allege a failure to inform; it alleges affirmative inequitable conduct seeking to deprive her of the benefit of her funds. While the *Pitts* defendant was permitted to refuse to offer a gratuitous discount, Grand Strand is not permitted to bill a Member for its services at a higher payment rate than it contractually agreed to accept. The complaint does not allege a mere matter of erroneous billing. When Grand Strand billed Beverly for covered services, it declined to bill her at the contracted for, discounted rate, and it sent her the bill in violation of its contract with BCBS. Accordingly, it was error for the circuit court to dismiss the quantum meruit claim at the 12(b)(6) stage.

**Conclusion**

We reverse the circuit court's dismissal of Beverly's breach of contract and quantum meruit claims. We affirm as to the dismissal of the claim for breach of fiduciary duty and remand this matter for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS and HILL, JJ., concur.**